**Albert W. MORTON, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.**

Civ. A. Nos. C75–1969A, C76–1967A and C77–1610A.

United States District Court, N. D. Georgia, Atlanta Division.

April 10, 1980.

438

Albert W. Morton, pro se.

William L. Harper, U. S. Atty., Robert J. Castellani, Asst. U. S. Atty., Myles E. Eastwood, Asst. Regional Atty., Dept. of HEW, Atlanta, Ga., for defendant.

ORDER

ROBERT H. HALL, District Judge.

At the pre-trial conference held in chambers in these cases on January 20, 1980, the parties advised the Court that there were three remaining procedural issues to be resolved. This order will rule upon each of them as follows: (a) Defendants' Motion to Change Style of Case and to Substitute New Defendant; (b) Plaintiff's Motion for Reconsideration; and (c) Defendants' Third Motion for Sanctions.

*Defendants' Motion to Change Style of Case and to Substitute New Defendant*

Civil Action No. C76–1967A was originally filed by the plaintiff in the United States Court of Claims on February 26, 1975, following a final action by the Civil Service Commission's Appeals and Review Board. Subsequently, the Court of Claims ruled that it did not have jurisdiction over plaintiff's Title VII action and transferred that case to this court. As is the rule in the Court of Claims, plaintiff had named the United States as the party defendant.

On October 3, 1977, plaintiff filed Civil Action No. C77–1610. In that case he named as defendants the Secretary of Health, Education and Welfare; three of his former supervisors in the Social Security Administration, that is, Ms. Mary Cain, Ms. Patricia A. Shirley and Mr. William D. Gladden; and the Chairman and members of the Civil Service Commission's Appeals Review Board.

On June 7, 1979, this court dismissed the three supervisors, that is, defendants Cain, Shirley and Gladden on immunity grounds. Although it was not necessary to address them, other grounds presented by the defendants for dismissal included the statute of limitations and the unavailability of pendant party jurisdiction.

In the June 7, 1979 Order of this court, the Civil Service Commission officials were also dismissed because Title VII allows suits only against "the head of the department, agency or unit." 42 U.S.C. § 2000e–16(c).

The remaining defendants are (a) Joseph A. Califano, Jr., Secretary of Health, Education and Welfare in Civil Action No. C75–1969A; (b) United States of America in Civil Action No. C76–1967A; and (c) Secretary of Health, Education and Welfare in Civil Action No. C77–1610A. These three cases were consolidated by this court's order entered on April 17, 1978, ruling: "The three above-captioned cases are hereby consolidated for discovery, trial and all other purposes."

It is noted that Patricia Roberts Harris succeeded Joseph A. Califano, Jr. as Secretary of Health, Education and Welfare on August 30, 1979. The defendants in this case have moved the Court to substitute her as the sole remaining defendant in these

three cases and to correct the style of the case to reflect this change and substitution. The court agrees.

 First, Patricia Roberts Harris as Secretary of Health, Education and Welfare is "the head of the department." It is settled in this district and other courts that the only proper defendant in Title VII cases is the head of the department which allegedly discriminated in its employment practices. Order, entered June 7, 1979, at page 4–5; *Jones v. Brennan*, 401 F.Supp. 622, 627 (N.D.Ga.1975); *Rozier v. Roudebush*, 444 F.Supp. 861, 872 (S.D.Ga.1977). Accordingly, the only proper party defendant in each of these three Title VII cases is the Secretary of Health, Education and Welfare.

Second, as the new Secretary of Health, Education and Welfare, Ms. Harris is defendant Califano's successor in office. Because the Secretary is sued in an official capacity as a federal official, it is appropriate to substitute the new holder of the office as the party defendant. Thus, Patricia Roberts Harris should be substituted as defendant in all three cases. Rule 25(d), F.R.Civ.P.

Accordingly, the defendants' motion to change style of case and to substitute a new defendant is GRANTED. The style of the case is hereby ORDERED to read as is set out in the head of this order. Further, the clerk is directed to correct the style of this case on the docket and any judgments entered in this case. Because the only remaining issues relate to the Defendant Secretary, there appears no just reason for further delay in entering judgment in favor of the three individual defendants who were dismissed on June 7, 1979. Thus, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the clerk is hereby directed to enter final judgment in favor of defendants Mary Cain, Patricia A. Shirley and William D. Gladden.

*Plaintiff's Motion for Reconsideration*

 In plaintiff's complaint in Civil Action No. C75–1969A, he alleged that he had been denied employment with HEW in At-

lanta in various jobs from 1971 through 1975. (Complaint, para. 13). Plaintiff also requested in his prayers for relief that he receive a certain per diem for the length of his work assignment in the Social Security Administration Central Offices in Baltimore (prayer no. 2); additional travel expenses between Atlanta and Baltimore (prayers nos. 3, 4, 5 and 6); and reimbursement for leave used while stationed in Baltimore and other relief. It was not until this Court issued its order of September 27, 1978, compelling him to answer HEW's interrogatory no. 30 that plaintiff named the specific jobs in issue in Civil Action No. C75–1969A. He thus identified 18 jobs by vacancy announcement number, job title and grade. Of these he alleged that six were GS–13 level, that is, vacancy announcement No. 206–73, Senior Staff Officer; No. 249–73, Branch Manager; No. 252–73, Methods and Procedures Analyst; No. 262–73, Social Insurance Administrator; No. 269–73, Program Integrity Specialist; and No. 281–73, Resident Health Insurance Representative.

In the plaintiff's amended complaint in Civil Action No. C76–1967A, plaintiff alleged that there are five positions at issue (Amended Complaint, para. 12). In his prayers for relief he requested transfer from Baltimore back to Atlanta, Georgia (prayer no. 1); back pay during an alleged period of AWOL during April, 1974 (prayer no. 3); and per diem at a certain rate during his assignment in Baltimore (prayer no. 4), and other relief. Here also, plaintiff did not identify these jobs until he was compelled to so by the 1978 order. His answer to HEW's interrogatory no. 31 identified eight (8) specific jobs by vacancy announcement number, job title and grade. Included in this list were three jobs alleged to have been at GS–13, that is, vacancy announcement No. 327–74, Contract Specialist; No. 461–74, Disability Examiner; and No. 474–74, Supplemental Security Income Planning Specialist.

In Civil Action No. C77–1610A, plaintiff generally alleged that the Civil Service Commission had taken more than 180 days to rule on an administrative appeal concern-

ing an unspecified matter. (Complaint, paras. 21 and 22). The defendants represented at various stages of this litigation that this job was in fact the same vacancy announcement No. 474–74 which was the subject matter of Civil Action No. C76–1967A. The matter was not resolved until plaintiff filed his compelled answer to HEW's interrogatory no. 32. His answer number 32 identified only vacancy announcement No. 474–74, Supplemental Security Income Planning Specialist, GS–13, as a pending issue of non-selection.

The defendants moved on February 6, 1979, to dismiss all plaintiff's claims concerning non-selection for federal positions with the Social Security Administration at GS–12 or below on the grounds that those issues were moot. This court granted that motion in its order entered July 17, 1979. Plaintiff thereafter filed his motion for reconsideration, petitioning this court to reinstate all eighteen (18) jobs ranging from GS–7 to GS–12.

It is undisputed in this case by the parties that plaintiff was transferred back to Atlanta, in accordance with his express desire, on April 10, 1975. (Plaintiff's Amended Complaint, prayer no. 1 [C76–1967]; Plaintiff's Proposed Finding of Fact No. 72; Defendants' Proposed Finding of Fact No. 54; Plaintiff's Interrogatory Answer No. 5(f); "Notification of Personnel Action" appended as Exhibit H to Defendant's Response and Brief in Opposition to Plaintiff's Motion to Reconsider, filed March 14, 1977). The parties are also in agreement that plaintiff has been a GS–12 employee of the Defendant Secretary since 1972. (Plaintiff's Proposed Finding of Fact No. 28; Defendants' Proposed Finding of Fact No. 8; Plaintiff's Interrogatory Answer No. 5(d)). The discovery and Plaintiff's Proposed Findings of Fact disclosed that the jobs at issue came open in 1973 and 1974. Plaintiff's theory in this case, as presented in his Proposed Finding of Fact, does not address whether he was *prima facie* qualified for any job other than vacancy announcement No. 474–74, Supplemental Security Income Planning Specialist, GS–13. (Plaintiff's Proposed Findings of Fact Nos. 99–115).

When this Court ruled on this issue previously, it was stated:

> Here, the plaintiff is unable to specify the relief that should flow from his wrongful non-selection to positions at grade GS–12 or below. Obviously, there is no basis for an award of back pay. And, significantly plaintiff does not ask to be assigned to any of these positions should he succeed in proving discrimination. Absent an indication that plaintiff intends to be placed in one of the jobs at GS–12 or below, he has no claim for relief. *See Locke v. Board of Public Instruction of Palm Beach County*, 499 F.2d 359, 364–65 (5th Cir. 1974).

Order entered July 17, 1979, at p. 2.

The situation has not changed in the interim. Rather, there is no on-going activity with regard to plaintiff's seeking promotions or lateral transfer to other jobs at GS–12 or below. Because plaintiff has had a job at the same GS–12 level at all pertinent times since 1972, and because he has had a job since 1975 with the Social Security Administration (the agency of his choice), in Atlanta, Georgia (the location of his choice) as a GS–12 (his continuous grade), his claim was properly dismissed as moot. Compare *Locke v. Board of Public Instruction of Palm Beach County, supra* with *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Accordingly, plaintiff's Motion for Reconsideration is DENIED.

### Defendants' Third Motion for Sanctions

For almost two years the defendant has been attempting to obtain certain tax information from the plaintiff. On May 1, 1978, plaintiff was served a request to produce his federal, Georgia and Maryland income tax returns, intangible tax returns and gift tax returns together with all attachments and schedules for tax years 1971–1977. The defendant also filed a single set of interrogatories on April 11, 1978. Thereafter, the course of discovery in this litigation followed a series of twists and turns; however, plaintiff has still not produced any tax returns.

It is noted first that plaintiff's answers to the single set of interrogatories, filed after this Court compelled them, showed the plaintiff holds two law degrees, that is, JD and LLM. The records on file in the Office of the Clerk of this court show further that plaintiff, as a *pro se* plaintiff, tried a jury case last year against a local county official.

In these three consolidated cases at bar, plaintiff has shown himself well familiar with the discovery procedures provided under Rules 26–36 of the Federal Rules of Civil Procedure. In Civil Action No. C75–1969A, plaintiff filed a set of interrogatories on March 8, 1976; a set of interrogatories on April 6, 1976; a set of Requests for Admissions on January 26, 1976; a set of Requests for Admissions on March 8, 1976; a Request for Production of Documents on March 8, 1976; a Request for Production of Documents on April 6, 1976; and a Motion to Compel in chambers at a discovery conference on September 26, 1978. In Civil Action No. C76–1969A, plaintiff has submitted a set of interrogatories on September 22, 1976; and a Motion to Compel on July 13, 1977. In Civil Action No. C77–1610A, the plaintiff filed a set of Requests for Admissions on February 14, 1978, and another set of Requests for Admissions on February 21, 1978. He thus used the federal discovery procedures on 13 occasions in this litigation.

With regard to the defendant's single set of interrogatories, plaintiff waited thirty-seven (37) days to file objections and partial answers on May 18, 1978. With regard to the single request for production of documents, plaintiff filed blanket objections on June 6, 1978. He told counsel for defendant that it would take a court order to make him produce the requested tax records.

Under the Local Rules of this court, plaintiff and counsel for defendant conferred with regard to his failure to provide complete discovery. Plaintiff declined to further answer 12 specified interrogatories and also declined to produce the tax returns. Defendant's Motion to Compel was filed as to both matters on June 28, 1978.

Following briefing by both parties, the motion was set down for discovery conference in chambers on September 26, 1978. The Court granted the defendant's motion as to 11 of the 12 interrogatories and requested both sides to further brief the tax return issue. At no time did plaintiff deny possession of the pertinent documents. The only issue presented by the parties to this Court was whether plaintiff would be ordered to make them available for discovery by counsel for defendant.

When plaintiff filed his supplemental answers pursuant to the court's order compelling such discovery, he provided much significant information. This included specific dates relating to jurisdictional matters, certain facts relating to the immunity issues that concerned his three former supervisors, the answers enumerated above to interrogatories nos. 30, 31 and 32 on job vacancies, and dates relating to the statute of limitations. For the first time, plaintiff acknowledged on the record that he held the Juris Doctor and Master of Law degrees.

Following briefing by both sides, this court granted the motion to compel production of plaintiff's tax records. This order was entered on December 15, 1978 and served on the parties. At that time, the discovery showed that plaintiff had maintained his residence in the State of Georgia continuously from 1971. Accordingly, any possible issue as to Maryland tax returns was dropped from the case.

Two and a half weeks later, on January 2, 1979, plaintiff responded to the first order compelling the production of tax returns. Although the matter had been in litigation since the spring of 1978, plaintiff advised the Court and the defendant for the first time that he could not locate his tax records. He offered "to reconstruct his wages" if he could be convinced that there was a real need by the defendant for the information. He further sought to limit any production for use in the defense case-in-chief. Counsel for the defendant helpfully provided him with forms needed to obtain copies of his tax returns from the appropriate tax jurisdictions. Counsel for

the defendant further explained the minor expense involved if this were the only means by which plaintiff would be able to produce his tax returns. Plaintiff responded by stating to counsel for defendant that plaintiff would only reconstruct his "wages" and only in the event that counsel could convince plaintiff, not the Court, of the need for the tax returns. Thereafter, defendant moved on February 6, 1979 for sanctions to be imposed on the plaintiff.

On February 26, 1979, plaintiff responded to that first motion for sanctions by stating that he no longer had the tax returns which had been requested. He stated as his reason that he was under no legal obligation to retain his tax records until such time as he might be audited again by the IRS. Plaintiff did not explain why he had not obtained new copies of the returns which this Court had ordered to be produced. He did not attempt to reconcile his January statement that he could not locate his returns with his new statement in February that he no longer had them. Furthermore, he did not explain why he never mentioned this previously in the months of litigation over whether he should produce them at all. Finally, he ignored the portion of the request for production which related to his Georgia income, gift and intangible tax returns.

This Court reminded plaintiff of his explicit obligation to produce these tax returns in the Order of June 7, 1979. The Court also expressly reminded the plaintiff that he, like any other litigant, could suffer sanctions for a refusal to obey a court order and a refusal to participate in the discovery process. The Court admonished plaintiff:

> The sanction proposed by the defendants is dismissal of all or portions of the plaintiff's claims. While these could constitute harsh and drastic sanctions, it should be made clear that the plaintiff's obligations under the Federal Rules of Civil Procedure and as a litigant before this Court are not to be ignored or evaded. The plaintiff is to obey court orders at all times, not merely at his convenience. We will deny the motion for sanctions at this time, without prejudice to its being re-

newed should the plaintiff continue to violate the court's order of December 15, 1978, compelling production of tax returns.

Order of June 7, 1979, at page 5.

Thereafter, the parties conferred on different occasions for the purpose of preparing a consolidated pre-trial order in these cases. Counsel for defendant suggested that these meetings would provide a good opportunity for plaintiff to produce his tax returns in accordance with the June 7 order. Plaintiff was noncommittal with regard to his obedience to this second order compelling production. Finally, at the July 5, 1979 meeting between plaintiff and counsel for defendant, plaintiff was directly queried as to whether he had his tax returns with him and whether he intended to produce them at all. Plaintiff responded that he was merely going to stand by his prior statement to the Court and counsel. He declined to explain himself further when asked if that meant he was continuing to refuse to produce his tax returns. Counsel for the defendant gave plaintiff another opportunity to produce his tax returns, and the date of the submission of the pre-trial order was set as yet another deadline for the plaintiff to comply. When the parties submitted the consolidated pre-trial order on August 14, 1979, plaintiff still had not produced the ordered tax returns. When asked by counsel for the defendant about this, the plaintiff stated that he still had not changed his mind. The defendant filed a Renewed Motion for Sanctions on August 21, 1979.

On November 7, 1979, the Court dismissed plaintiff's three cases without prejudice because of his refusal to obey the two prior orders. However, the Court again exercised caution with regard to this *pro se* plaintiff and allowed him ten days to file an affidavit of his willingness to comply with the court's order of December 14, 1978. Plaintiff filed both an affidavit and a Motion for Reconsideration. The defendants urged the Court not to accept plaintiff's representations, arguing that the affidavit was equivocal with regard to his other

claims for monetary relief, that is, back pay for the 1974 AWOL, the appropriate level of per diem and the amount of allowable travel expenses for his move between Atlanta and Baltimore, back pay for the GS–13 jobs, and the like. Nonetheless, the Court reinstated plaintiff's three complaints and ruled:

> Hopeful that the plaintiff is now prepared to litigate this action under the Federal Rules of Civil Procedure, and desirous of assuring adjudication on the merits, we will hold the plaintiff's affidavit complies with the suggestion in our November 7 order and reopen the actions. The court expects that the plaintiff will now comply with his discovery obligations in an expeditious manner; we will entertain a renewed Rule 37 motion to dismiss if this does not prove to be the case.

Order of December 10, 1979, at p. 2.

Counsel for defendant did not hear further from plaintiff. Counsel called the plaintiff on January 8, 1980, about setting up a date for the production of the tax returns. Plaintiff refused, relying instead on his prior brief and affidavit. Plaintiff stated that he would not provide his tax returns without an additional, express, future court order specifying the precise returns to be produced by year and type. Plaintiff further expressed his disregard of the four previous orders of this Court by relying on the reassignment of this litigation to a different district judge.[1] In short, plaintiff would not produce his tax returns until after re-litigating the issue yet another time.

On January 20, 1980, the pre-trial conference between the parties was held in chambers. It was noted that the defendants had filed their Third Motion for Sanctions the preceding week on January 15, 1980. When plaintiff indicated that he did not believe he had been expressly ordered to produce specific tax materials, the Court directly advised him that the plain meaning of the four orders previously entered by this Court obligated him to produce his tax returns to

counsel for the defendants. He was also advised that the motion for sanctions would not be ruled upon until he had full opportunity to respond thereto.

On January 25, 1980, plaintiff filed Plaintiff's Response to Defendants' Third Motion for Sanctions, stating that he had ordered his forms 1040 and that when he received them from the Internal Revenue Service he would provide them and the "available W–2 forms, solely for the purpose of assuring the court and defendants that plaintiff has enjoyed no interim earnings during the period under litigation." He thus claimed to moot the issue.

Plaintiff cannot place limitations on the discovery orders entered by this Court. He continues to ignore the interrelationship of the ordered tax materials and the monetary issues relating to back pay, per diem, travel expenses and other financial issues raised by plaintiff himself. He continues to ignore the presence of the request for his Georgia tax returns. Plaintiff has chosen not to respond or rebut the defendant's reminder that plaintiff continues to ignore his obligation to produce federal gift tax returns and Georgia income, intangibles, and gift tax returns. Likewise, he concedes that counsel for defendant has yet to see any of the requested returns after almost 2 years.

 In view of this ongoing situation, the Court concludes that plaintiff has not made a good faith showing of his willingness to comply with four previous orders of this Court relating to his discovery obligations. Instead, the Court finds that plaintiff has deliberately stalled his opposing parties and this Court on the terms of his compliance. He has attempted to relitigate the merits of this issue on numerous occasions despite clear court orders ruling adversely to his position. Although this discovery issue clearly relates to many other issues to be tried in this case, plaintiff's representations to the Court have attempted to cloud these matters. This *pro se*

---

1. On December 12, 1979, this case was reassigned to newly-appointed Judge Robert H. Hall. Previous orders in the case had been entered by Judge Richard C. Freeman.

plaintiff has two law degrees and extended experience with the federal discovery rules; his gamesmanship is his own choice. *See Diaz v. Southern Drilling Co.*, 427 F.2d 1118 (5th Cir. 1970). The Court further finds that his tactics and gamesmanship constitute a willful effort to both evade and frustrate discovery. *Id.* It is noted that plaintiff is well aware that the discovery rules apply to Title VII litigation. *Philpot v. Philco-Ford Corp.*, 63 F.R.D. 672 (E.D.Pa. 1974). The Court finds additionally that plaintiff fully understands these obligations but that he has willfully and deliberately failed and refused, in bad faith, to comply. *See Durgin v. Graham*, 372 F.2d 130 (5th Cir. 1967); *see also Griffin v. Aluminum Co. of America*, 564 F.2d 1171, 1173 n.2 (5th Cir. 1977).

Therefore, the Court finds that the imposition of sanctions under Rule 37 is appropriate in this case. This Court has entered four prior orders compelling plaintiff to produce his tax returns. Plaintiff has refused, despite express admonitions by the Court concerning the grave consequences that could flow from his continuing refusal to live up to his duties as a litigant. He continues to deny the defendant access to information necessary for preparation of its defense. Given all the circumstances, the Court finds that dismissal of the plaintiff's complaints in these three consolidated cases is just and appropriate. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Bonaventure v. Butler*, 593 F.2d 625 (5th Cir. 1979); *Mertens v. Hummell*, 587 F.2d 862 (7th Cir. 1978); *In re Liquid Carbonic etc. v. Turner*, 580 F.2d 819 (5th Cir. 1978); *Romari Corp. v. United States*, 531 F.2d 296 (5th Cir. 1976); *see also Philpot v. Philco-Ford Corp., supra.*

Accordingly, the defendant's Third Motion for Sanctions is GRANTED and plaintiff's three complaints are DISMISSED in their entirety with prejudice. It is, therefore, ORDERED and ADJUDGED that final judgment should be, and hereby is, entered in favor of all the defendants and against plaintiff. The clerk is accordingly directed to enter final judgment in this case, with costs being taxed against plaintiff.

So ORDERED.