Albert W. MORTON, Plaintiff–Appellant,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant–Appellee.

No. 80–7391
Summary Calendar.

United States Court of Appeals, Fifth Circuit.
Unit B.

Oct. 20, 1980.

Rehearing Denied Dec. 2, 1980.

Albert W. Morton, pro se.

Myles E. Eastwood, Asst. U. S. Atty., Atlanta, Ga., for defendant–appellee.

Before HILL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

The appellant appeals from a judgment of dismissal, with prejudice, as a sanction under Fed.R.Civ.P. 37(b) of three consolidated Title VII racial discrimination lawsuits (Civil Action's No. C75–1969A, No. C76–1967A, and No. C77–1610A) for willful and deliberate failure to comply with four lower court orders relating to discovery of his tax returns. We affirm.

We outline only those facts necessary to our discussion; for total clarity see the detailed order of the trial court, 86 F.R.D. 437. Appellant's causes of action in C75–1969A and C76–1967A allege that appellee (Secretary of Health and Human Resources, and her employees and subordinates) maliciously denied him employment opportunity in Atlanta, Georgia, because of his race. In civil action C77–1610A, appellant alleges that appellee maliciously discriminated against him by giving him a record–low appraisal of his work performance and by giving him a letter of reprimand. Included in his prayers for relief are demands for compensatory damages.

For almost two years, appellee has tried to obtain tax information from appellant. On May 1, 1978, appellant was served a request to produce his federal, Georgia, and Maryland income tax returns, intangible

tax returns, and gift tax returns together with all attachments and schedules for tax years 1971–1977 (R. I, 47–50).

On June 5, 1978, appellant filed blanket objections to the request and refused to produce these documents even after conferring with counsel for appellee. Appellee's attorney states by affidavit that appellant told appellee that he would not produce the documents without a court order (R. I, 134–135). On June 28, appellee filed a motion to compel (R. I, 117–120). At the discovery conference in chambers on September 26, 1978, the only issue presented by the parties was whether appellant would be ordered to produce the requested documents. Appellant never denied possession of the documents. However, after the court granted the motion to compel, appellant responded on January 2, 1979, that he was "unable to locate" the documents (R. I, 191–192; R. III, 899). He continued to litigate the issue of relevancy of the documents even though the court (after permitting both parties two opportunities to brief this issue) advised appellant that the issue was one of discovery, not admissibility (R. I, 190). Moreover, he set limits on the court's order: he offered "to reconstruct his individual wages . . . if such is needed" and sought to limit any production for use in appellee's case–in–chief (R. I, 189–190). On January 2, 1979, counsel for appellee suggested a simple procedure whereby the tax documents could be obtained: write to appropriate tax authorities (R. I, 193–194).

On January 5, counsel for appellee claims, by affidavit that appellant told him that appellant would not make any attempt to obtain copies of the tax returns. After twice advising appellant that sanctions may be sought against him for his failure to obey the court order of December 15, 1978, appellee filed a motion for sanctions on February 6, 1979 (R. II, 196–198). On February 26, 1979, appellant responded that "he does not have such tax papers" and continued to contest the issue of discoverability (R. II, 527–528).

On June 7, 1979, the court patiently instructed appellant that he must "obey court orders at all times, not merely at his convenience." The court denied the motion for sanctions "without prejudice to its being renewed should the [appellant] continue to violate the court's order of December 15, 1978, compelling production of his tax returns." (R. II, 556).

For almost three months, appellee tried again and again to get the ordered discovery but appellant still did not produce the documents. On August 21, 1979, appellee filed a renewed motion for sanctions (R. III, 574). On November 7, 1979, the court dismissed appellant's three complaints, without prejudice, for his refusal to obey the two prior court orders. The court allowed him ten days to file an affidavit of his willingness to comply with the court order of December 15, 1978 (R. III, 666–670). Appellant filed an affidavit and a motion for reconsideration. On December 10, 1979, the court reinstated the three complaints since it wanted to adjudicate the complaints on their merits and since it was hopeful that appellant was now prepared to litigate the matter under the Federal Rules of Civil Procedure. The court clearly advised appellant that it expected him to "comply with his discovery obligations in an expeditious manner" otherwise the court "will entertain a renewed Rule 37 motion to dismiss" (R. III, 680–681).

As of January 8, 1980, appellant had not complied with the court orders compelling a production of the tax records. On January 8, counsel for appellee, by affidavit, stated that he tried to set up a time with appellant for the production of the court–ordered documents. Counsel for appellee alleges, by affidavit, that appellant told him that appellant "would wait until the new District Judge to whom these three cases had been reassigned ordered [appellant] to produce his tax returns . . ." and "that he had made it as clear as he could in his prior brief and affidavit that he would not produce his tax returns unless and until the Court entered a future order specifying each return to be produced." (R. III, 731–732).

On January 15, 1980, appellee filed a third motion for sanctions (R. III, 682). On January 25, appellant filed his response. In it, he agreed to order his Forms 1040 and, on receipt, to submit these forms with relevant copies of available W–2 forms (R. III, 762–763). On February 1, appellee filed a reply to appellant's response. In it, appellee points out that appellant has not offered one reason why he has not provided and will not provide the Court–ordered discovery of anything other than his Form 1040 and W–2 (R. III, 783–784).

On April 11, 1980, the court granted appellee's third motion for sanctions and dismissed appellant's three complaints in their entirety, with prejudice. (Order dated April 10, 1980 and filed April 11, 1980).

■ The standard of review set by the Supreme Court in a Rule 37(b) case is not whether a reviewing court would, as an original matter, have dismissed the action; it is whether the lower court abused its discretion in dismissing that action. *National Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 750 (1976). This Circuit will not interfere with a lower court's dismissal of an action for failure to comply with discovery orders unless important historical findings are clearly erroneous or, by imposition of sanctions which are not just, there has been an abuse of discretion. *Marshall v. Segona*, 621 F.2d 763, 766–767 (5th Cir. 1980).

In *Marshall*, this Court lists several examples of where the use of dismissal as a sanction under Rule 37(b) was upheld: dismissal where plaintiff refused to appear for deposition three times; default where defendant ignored three orders to produce documents; dismissal where plaintiff deliberately refused two orders to produce documents. *Id.* at 767.

■ In this case, appellant repeatedly failed or refused to fully comply with four court orders, even though the court provided appellant every opportunity to do so.

Appellant holds two law degrees: a J.D. and a L.L.M. (R. I, 176). He has demonstrated that he is well familiar with federal discovery proceedings. In this litigation, he used different discovery procedures on thirteen occasions. The court advised him repeatedly of the harsh consequences of his failure or refusal to obey a court–order. Appellant did not obey four court orders issued over a period of about two years. The trial court concluded that his tactics and gamesmanship constituted a willful effort to both evade and frustrate discovery. The record clearly establishes that he has willfully and deliberately failed and refused, in bad faith, to fully comply with any of the four court orders by complying only in small part (at his discretion and convenience); by ignoring other parts of court–ordered discovery; by trying to relitigate the issue of discovery again and again in the face of clear court orders dating back to December 15, 1978; by independently setting limitations on the discovery orders entered by the court; etc.

Appellant contends that the order imposing the sanction of dismissal is based on erroneous facts (e. g., the fact that appellant had not produced *any* tax returns) (Appellant brief at 30). Appellant submits that he produced, on March 12, 1980, his Form 1040 and W–2 forms for 1973 and 1974). By affidavit, counsel for appellee contests this allegation of appellant (R. III, 923, 924). Appellee also notes that, although appellant claimed that he did not have the tax records, the W–2 forms he ultimately produced were "Employee" copies (Copy C), not the Copy A which is filed with the IRS (Appellee brief at 27). Appellant does not mention the many other records covered by the trial court's orders.

Even *pro se* litigants are under an obligation to obey discovery orders. It is hard to imagine a situation in which a trial court would be required to exercise such patience and restraint as reflected by this record. The conduct of appellant was more than a sufficient basis for the dismissal, with prejudice, and there was no abuse of discretion.

AFFIRMED.