[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13280
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-01449-BJD-MCR

LANDON L. WILLIAMS,

Plaintiff-Appellant,

versus

BANK OF AMERICA CORPORATION,
MERRILL, LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

Defendants-Appellees,

MERRILL EDGE ADVISORY CENTER, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 19, 2020)

Before WILLIAM PRYOR, Chief Judge, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

Landon L. Williams brought an employment discrimination suit against his former employers Merrill, Lynch, Pierce, Fenner & Smith, Incorporated and Bank of America Corporation (the defendants).  After he failed to submit to a court-ordered deposition, the district court dismissed his suit under Fed. R. Civ. P. 41(b).  This is his appeal.

I.

Williams, a 51-year old African American man, was employed by Merrill Lynch as a Financial Solutions Advisor.  Merrill Lynch terminated him from that position after approximately 13 months.  Williams filed a pro se lawsuit in the Middle District of Florida against Merrill Lynch and Bank of America, as the owner of Merrill Lynch, raising claims under the Fair Labor Standards Act (FLSA), Title VII of the Civil Rights Act of 1964 (Title VII), and 42 U.S.C. § 1981.  The district court ultimately dismissed all but two claims: one FLSA claim against Merrill Lynch alleging unpaid overtime and one § 1981 claim against Bank of America alleging pay discrimination.

The defendants deposed Williams on the two remaining claims.  At the deposition, Williams repeatedly evaded questions and engaged in long narratives that were not responsive to the questions.  Defense counsel called a magistrate

2

judge to complain about Williams' conduct and expressed concern that they would

not be able to finish their questions by the end of the day.[1]  Counsel also told the

_____

[1] One of Williams' responses was read to the magistrate judge as an example of the type of evasive and long-winded answers he was giving. This is that part of the deposition transcript:

QUESTION: Mr. Williams, are you familiar with the MEAC [Merrill Edge Advisory Center] Spanish?
ANSWER: Absolutely I do know what that is.
QUESTION: Can you explain to me what the MEAC Spanish is?
ANSWER: African Americans were subjected to --
QUESTION: Mr. Williams, my question is, what is the MEAC Spanish? Just tell me what the role of MEAC Spanish is.
ANSWER: If we're going to have courtesy, if we're going to have a good deposition, and I'm attempting --
QUESTION: We're going to be here a very long time.
ANSWER: You have got to -- patience is not only a virtue, but it is a requirement that I impose on anyone who asks me a question, and you're not courteous. I'm trying to answer your question and you're interrupting me. This -- you know, this is not a federal investigation. This is a deposition and I'm attempting to answer the question.
QUESTION: Then answer the question.
ANSWER: I'm going to answer the question. Thank you.  African Americans-- and I happen to be a member of that racial community -- were subjected to benefits and terms, privileges of employment that were far more stringent, burdensome, and unfair as compared to our non African American counterparts. With that being said, I and other African American financial solutions advisors were required to field calls from Spanish only speaking customers of Bank of America Corporation/Merrill Lynch; whereas, my non African American counterparts enjoyed receiving English only calls, that they were able to convert those calls either to sales or to take care of a routine question and move on to the next customer.  Whereas, if you had the Spanish Merrill Edge Advisory Center [queue], you couldn't just move on. Because of Merrill Lynch and Bank of America Corporation's legacy of racial discrimination, there were not efforts to retain an appropriate level of Spanish speaking or colleagues who were of a Spanish ancestry to be able to facilitate the overwhelming number of calls that came from Spanish only customers. And so the Spanish MEAC [queue] was that [queue] that was set up on my phone, whereby, during my workday, I would receive these calls and could not communicate with these individuals and would have to keep these individuals on hold till I was able to talk to -- at the time there w[ere] only two, to my knowledge, there were only two colleagues who spoke fluent Spanish and were intelligent enough to communicate in Spanish about services of Bank of America Corporation and Merrill Lynch.  Then I think it moved from only two people to only one person, and he was a gentleman who was assigned to the Premier segment and he was blitzed with calls that were waiting in [queue].  He continuously put customers on hold to tell you to stay on hold. And so that is my knowledge of the Spanish MEAC.  It was a [queue] specifically for those individuals who did not speak fluent English.

judge that Williams had addressed the female defense counsel as "little lady" and referred to the male defense counsel as an "elitist" and an "idiot." The magistrate judge advised Williams of the proper conduct for a deposition and directed him to provide succinct answers to the questions. The judge then asked Williams if he would return for a follow-up deposition and Williams confirmed that he had "no problem" coming back and "they can depose me for whatever time frame. . . ." At 5:00 p.m., after approximately six hours on the record, counsel asked Williams if he would agree to continue the deposition because they had not finished their questions. Williams agreed.

The defendants scheduled a follow-up deposition for June 12, 2018. When Williams informed the defendants that he would appear only for one hour and only to answer questions relating to damages, the defendants filed a motion asking the magistrate judge to order him to sit for an additional four hours of deposition.[2]

Williams responded that the defendants' motion must be denied because they failed to attach a memorandum of law, which violated Middle District of Florida Local Rule 3.01(a).[3] He also argued that his initial deposition had taken

---

[2] A magistrate judge initially granted the motion and Williams agreed to appear for his deposition on June 29, 2018. Williams then moved to vacate that order, which the district court did because the magistrate judge had not allowed sufficient time for Williams to file a response.

[3] Rule 3.01(a) provides "in a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in a single document not more than twenty-five (25) pages." M.D. Fla L. R. 3.01(a).

seven-and-a-half hours, and the defendants had been unable to complete it, not because his answers had been evasive and obstructive, but because defense counsel had a plane to catch.

At the hearing on the motion, the defendants pointed out that Williams had agreed on the record to being deposed again.   And they argued there had been good cause to continue the deposition initially because not only had Williams' conduct necessitated the need for a follow-up deposition, but he had submitted an additional 1,500 pages of discovery after they had filed the motion to compel him to sit for four more hours of deposition.  The defendants argued that their failure to include a memorandum of law with the motion was inadvertent.  Williams responded that the defendants had questioned him on "nonsensical" issues and "wasted a lot of [their] time" by asking irrelevant questions such as where he lived, his criminal history, and whether he was married.  He denied agreeing to continue the deposition.[4]

---

[4] Even his denial that he had agreed to be deposed again was evasive and long-winded, as shown by the following exchange:

THE COURT: . . . Mr. Williams, at the time when defense counsel filed that motion, it is correct that you indicated during that deposition that you would be willing to come in for an additional deposition, correct?
MR. WILLIAMS: That is not correct. There was a stipulation during a rest room break in which I agreed to allow -- because we had a couple of countervailing forces that the Court is not aware of, and was not advised of during that time, when I was hot under the collar at [defense counsel] continuing to press an issue about a slanderous allegation of me making inappropriate statements towards a white female employee in the workplace. That's when -- and let me correct the Magistrate Court's record of the proceedings on May 18th, 2018. I insisted that [defense counsel]

5

The magistrate judge then granted the defendants' motion in part and allowed them an additional two and a half hours to depose Williams. The judge limited the questioning to Williams' "FLSA claim[], his job duties, his damages, the witnesses identified in discovery, and the 1500 pages of documents served on Defendants on the last day of discovery." The judge pointed out that Williams had agreed to continue the deposition, and it was "disturbing" that he claimed otherwise.

---

make that call to the court system, because I was tired of the harassment and the attempts at humiliating me during a time when they should have been asking me very pointed, succinct questions about Title 42 of the United States Code, Section 1981, as well as the overtime provisions of the Fair Labor Standards Act, which is -- comes under Title 29. They were asking me about marriages and divorces and residences and grade point averages and other foolishness.
THE COURT: But my question is this, Mr. Williams: During my conversation with you telephonically on May 18th, did you not say, "Your Honor, I have no problem in coming back to any follow-up deposition. I don't have a problem. If they have any questions, they can depose me for whatever time frame"?
MR. WILLIAMS: Your Honor, my recollection of that is that I was being cooperative. And I certainly did not – the Magistrate Court appears to have some problem with an African American pro se litigant being lied on by a group of individuals. I constantly told the Magistrate Court during that telephonic conversation that these two attorneys are lying on me. I was hot under the collar and in no [way] would I ever ask a Magistrate Court or opposing counsel to give me an examination which exceeds established rules whereby a deposition ought to be conducted. Under that same provision that [defense counsel] pointed to, it says that under no [way] is anyone supposed to be deposed more than seven hours. My deposition was seven-and-a-half hours. It was over 362 pages. And what is also interesting, that the Magistrate Court is apparently refusing to consider, is within the body of Document No. 116, every individual who was stating that someone is behaving --
THE COURT: I simply -- Mr. Williams, I simply --
MR. WILLIAMS: Your Honor --
THE COURT: I simply asked you a question: "Do you remember making that statement?"
MR. WILLIAMS: No, I do not remember making that statement.
THE COURT: Okay. All right. Well, go ahead. Continue.

6

The judge, noting that Williams had not "even answer[ed] the Court's questions directly and succinctly" at the hearing, cautioned him that if he "impedes or frustrates the examination by failing to respond to defense counsel's questions succinctly and directly, the Court may extend the time beyond two and a half hours, and, if warranted, impose appropriate sanctions" under Fed. R. Civ. P. 37.[5] The judge found that the defendants' failure to include a memorandum of law was inadvertent and their motion substantially complied with Rule 3.01(a) because it cited the relevant rules under which they sought relief.  The judge gave one more warning at the end of his order that Williams' failure to comply with his directives "may result in the imposition of sanctions without further notice."

The defendants asked Williams to appear for his deposition on September 12 or 13, 2018.  Williams responded that he would not agree to a date until he had reviewed the magistrate judge's order.  He then filed a motion to vacate that order, repeating his arguments that the defendants' motion had failed to comply with Rule 3.01(a) and that he had not agreed to be further deposed.

The district court affirmed the magistrate judge's order.  It noted that Williams "continues to file objections that include sweeping complaints about the

---

[5] Fed R. Civ. P. 37(b)(2)(A) provides that a party's failure to obey a discovery order may result in numerous sanctions, including "dismissing the action or proceeding in whole or in part."

7

entire case as well as irrelevant allegations that make his objections and filings unnecessarily long." The court directed that Williams submit to his follow-up deposition by September 28, 2018.

The defendants scheduled Williams' deposition for September 26, 2018. Williams informed them that he would be available on September 28 and the defendants agreed to that date. On September 27, however, Williams filed a notice of appeal to this Court of the district court's order compelling him to be deposed.[6] He did not appear for the deposition.

The defendants moved for sanctions and dismissal under Fed. R. Civ. P. 37(b) and 41(b)[7] based on Williams' repeated failure to comply with the court's orders compelling his deposition. They sought dismissal of the complaint, or, in the alternative, the dismissal of his FLSA claim and for attorney's fees and costs. Williams moved to strike the defendants' motion because it exceeded 25 pages and they had not conferred with him before filing it, in violation of Middle District of

---

[6] We dismissed that appeal for lack of jurisdiction because the district court's order was not a final or immediately appealable order. See Doe No. 1 v. United States, 749 F.3d 999, 1004 (11th Cir. 2014) (explaining that discovery orders are generally not final or immediately appealable).

[7] Fed. R. Civ. P. 41(b) provides:

If the plaintiff fails to prosecute or to comply with the[] [Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

Florida Rule 3.01(a) and (g).[8]  He again argued that the defendants had failed to comply with Rule 3.01(a) in their motion for additional time and he sought his own sanctions against them.

The magistrate judge recommended denying Williams' motion to strike and granting the defendants' motion for sanctions and dismissal.  The judge found that the defendants' motion did not exceed 25 pages and the requirement to confer with opposing parties did not apply to motions to dismiss.  He noted that "[e]very time defense counsel issued a notice of follow-up deposition, [Williams] filed a new (unmeritorious) motion or a notice of appeal to stall the discovery process, thereby wasting opposing counsel's and the Court's time and resources."  Williams had "engaged in a clear pattern of delay and has shown willful disregard for this Court's Orders" and, in light of that, the judge "[did] not have great confidence that [Williams] would suddenly modify his behavior in response to another order of the Court."  Because sanctions had not yet been imposed, however, the magistrate judge believed that monetary sanctions, instead of a dismissal, would be sufficient.

---

[8] Rule 3.01(g) provides, in part, that "[b]efore filing any motion in a civil case, except. . . [a motion] to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion. . . "  M.D. Fla. L. R. 3.01(g).

Williams objected to the magistrate judge's report and recommendation, claiming for the first time to the district court that the reason he had not appeared for his deposition was because he was "disabled" and "too sick to appear."[9] He did not say in what way he was disabled or sick or how it had prevented his appearance. And he again argued, now for the fourth time, that the court had erred in granting the defendants additional time to take his deposition because their motion had failed to comply with a local rule.

The district court adopted the magistrate judge's report and recommendation, but instead of imposing monetary sanctions, it dismissed Williams' complaint with prejudice under Rule 41(b). The court noted that the defendants had issued five notices for Williams' deposition and he had not appeared for it on any of those dates.[10] It found "particularly troubling" that Williams now claimed that a disability had prevented him from appearing but he failed to attach any corroborating evidence. And it pointed out that he continued to assert that the defendants had violated a local rule even though it had already found that claim meritless. Noting that disagreement with court orders "does not give

_____

[9] Williams had mentioned that he was disabled in the telephone conference with the magistrate judge during his initial deposition, stating that he was "fully disabled" and if the weather turned "horrible" he would need to continue the deposition.

[10] The district court was referring to the scheduled depositions for June 12, 2018, June 29, 2018, September 11 or 12, 2018, September 26, 2018, and September 28, 2018. (See Doc. 179 at 2; Doc. 177 at 23-26).

10

[Williams] license to ignore them," and "[i]n the face of the Magistrate Judge's less-severe recommended monetary sanction, [Williams] persists in conduct he has been repeatedly warned against," it concluded that "[i]n light of [his] persistence, the Court is convinced that no sanction short of dismissal with prejudice will do."

## II.

We review only for an abuse of discretion a district court's order dismissing an action under Fed. R. Civ. P. 41(b). Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999). "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." Id. "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (affirming a district court's order of dismissal for failure to obey a discovery order, noting that the plaintiff's "conduct and words evidence a refusal to acknowledge the authority of the magistrate [judge] and indicate no willingness to comply with court orders").

Williams first argues that the district court abused its discretion in dismissing his suit for failing to comply with court orders because those underlying orders were improper. He refers to his argument, raised numerous times in the district court, that the defendants' motion for additional time to depose him

11

violated Middle District of Florida Local Rule 3.01(a).    He also asserts that the defendants failed to comply with Rule 3.01(a) and (g) in their motion to dismiss, and that the district court consistently excused them from following the local rules but required him to do so.

Local rules are "designed to help the court identify and organize the issues in the case" and we "give great deference to a district court's interpretation of its local rules." Fils v. City of Aventura, 647 F.3d 1272, 1282–83 (11th Cir. 2011) (quotation marks omitted). When a submission is sufficient for the district court, even if it did not comply with the letter of the local rule, it is "good enough" for us. Id. at 1283. The magistrate judge found, and the district court affirmed, that the defendants' motions substantially complied with the local rules. Because the motions were sufficient for the district court, they are good enough for us.

Williams next contends that the district court abused its discretion in dismissing his suit in its entirety, instead of dismissing only his FLSA claim. He argues that the follow-up deposition was limited only to his FLSA claim, and so his § 1981 claim, which the defendants had extensively questioned him about during his initial deposition, should not have been dismissed. That argument fails. The magistrate judge had ordered Williams to respond not only to questions regarding his FLSA claim, but also to questions concerning "his job duties, his damages, the witnesses identified in discovery, and the 1500 pages of documents

12

served on Defendants on the last day of discovery." Williams' follow-up deposition was not limited to his FLSA claim. The district court did not err in dismissing both claims instead of one.

Williams also argues on appeal that he is disabled and could not appear for the deposition, but, as he did in the district court, he fails to provide any details about his disability and how it would have excused his appearance at any of the scheduled depositions.

The record supports the district court's decision to dismiss Williams' claims. Williams agreed that he would appear for a follow-up deposition "for whatever time frame" but later denied doing so. The defendants made five attempts to schedule his deposition, and each time Williams filed a last minute motion (or a notice of appeal) to avoid being deposed and refused to appear, even on a date that he had specifically requested. His conduct resulted in two court orders directing him to appear for a deposition, which he failed to obey. And one of those orders informed him that his failure to comply could result in sanctions under Rule 37, which expressly provides for dismissal of an action for a party's failure to obey a discovery order.[11] Williams continued to make the same baseless assertions that

---

[11] Although Williams was proceeding pro se, "[e]ven pro se litigants are under an obligation to obey discovery orders." Morton v. Harris, 628 F.2d 438, 440 (5th Cir. Unit B 1980). And the record shows that Williams had litigation experience. He attended law school for approximately two years and stated that he had previously litigated "three to five" lawsuits on his own behalf in the Middle District of Florida. The magistrate judge found that Williams had filed "at least twelve civil actions in the Middle District of Florida alone."

the court could not compel him to be deposed because the defendants had not complied with a local rule. As a result, the district court did not abuse its discretion by concluding that even "[i]n the face of the Magistrate Judge's less-severe recommended monetary sanction, [Williams] persists in conduct he has been repeatedly warned against," and "[i]n light of [his] persistence, the Court is convinced that no sanction short of dismissal with prejudice will do."  See Gratton, 178 F.3d at 1374.  Williams' "conduct and words evidence[d] a refusal to acknowledge the authority" of the magistrate judge and the district court, and "indicate[d] no willingness to comply with court orders."  Moon, 863 F.2d at 839.

Because the record fully supports the district court's finding of willful noncompliance and its conclusion that lesser sanctions would not suffice, dismissal was not an abuse of discretion.

**AFFIRMED.**