**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**Johnny SEGONA, d/b/a Highway 190 Truck Stop and as Truckem Up Paradise, Defendant-Appellee.**

**No. 79–2790 Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

July 16, 1980.

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Donald S. Shire, Mary-Helen Mautner, Attys., U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Williams & Fisher, Nathan S. Fisher, Baton Rouge, La., for defendant-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

JOHN R. BROWN, Circuit Judge:

F.R.Civ.P. 37 discovery sanctions are involved in this appeal. Because of the Secretary of Labor's failure to timely answer interrogatories, the District Court dismissed the Secretary's suit to enforce the Fair Labor Standards Act, 29 U.S.C.A. §§ 201 *et seq.* ("Act"). We reverse and remand.

### Background

When this suit was filed on March 20, 1978, Johnny Segona owned and operated two truckstops located near Port Allen, Louisiana. The Secretary alleged that certain unnamed employees had not been paid the minimum wage nor the required premium for overtime work. Segona was also alleged to have failed to accurately record the names of his employees, their hours, and wages, in violation of 29 U.S.C.A. § 211(c) and 29 CFR Part 516. Injunctive relief and the payment of back wages were sought.

Segona's initial response was to motion for a more definite statement. F.R.Civ.P. 12(e). On May 2, 1978, the District Court granted the motion, and directed the Secretary to amend its complaint by supplying

the names of the underpaid employees, the period in which each was underpaid, and their working locations. The Secretary then motioned the District Court to reconsider its order in light of the contrary result in *Mitchell v. EZ Way Towers, Inc.*, 269 F.2d 126 (5th Cir. 1959) (Brown, J.), a factually similar case. On June 15, 1978, the District Court rescinded its order, but warned that it would "require the plaintiff to do everything, the hard way, that was contained in that order, that it could have done the easy way by simply complying with the Court's order of May 2, 1978." The Court further ordered that:

> all of the information sought by the defendant in its motion for a more definite statement filed on April 10, 1978 may be obtained by the defendant by the filing of interrogatories, or by the taking of depositions, and the plaintiff is here by DIRECTED to furnish, if directed to do so by interrogatory or by deposition, all of the information requested by defendant in its motion for `a more definite statement filed on April 10, 1978 insofar as that information may be in the possession of, under the control of, or obtainable by the plaintiff. Failure to furnish such information, if requested by interrogatory or by deposition, will result in dismissal of this suit.

Segona filed nineteen interrogatories in July, the first four of which asked for the names, locations, and working hours of all the underpaid employees. On August 29, the Secretary timely answered but the answers to the first four interrogatories did not provide the information requested. The Secretary stated that answers to those four interrogatories were being compiled, that the compilation was however "a difficult matter because of the incompleteness of defendant's time [sic] and payrolls," that "an additional review of such records will probably be necessary," and that the information would be voluntarily furnished to Segona when compiled.

Two months passed without further communications from the Secretary. On November 14, Segona motioned for F.R.Civ.P. 37 sanctions based on the Secretary's failure to answer the four interrogatories. A hearing on the motion was set for December 15. On December 11, the Secretary filed a reply, stating that each of Segona's employees including 27 names furnished to Segona in August, had been underpaid in every week during the relevant time period. By a minute order of December 14, the District Court denied Segona's motion to dismiss but stated that "[d]efendant . . has never received answers to [the first four] interrogatories by the plaintiff . . and there has been no apparent attempt made to answer those interrogatories."[1] Despite this perceived failure, the Court, pursuant to F.R.Civ.P. 37(a) and "out of an abundance of caution," ordered the Secretary to "fully and completely" answer within 30 days. The Court stated that no extension of time would be granted and that failure to comply would upon request result in dismissal.

On January 19, 1979, the Secretary filed an exhibit of more than 100 pages, setting out detailed wage and hour information for each employee. Because the 30 days ended on a Saturday, the answers were due on Monday, January 15. The answers were thus four days late.

### The Sanctions Emerge

Segona took no immediate action with respect to the Secretary's four-day error. Over the next two months, Segona was engaged in answering the Secretary's discovery as well as changing his lawyers. No motion for dismissal was made. But it was soon apparent that the Secretary was not to escape his January 19 error so easily.

On March 23, 1979, Segona moved to dismiss under Rule 37(b) because of the Secretary's four-day delay in filing the supplemental answers. In response, the Secretary filed two affidavits. In one, the Labor

---

1. This statement suggests that the District Court overlooked the Secretary's partial answers of three days before.

Department lawyer in charge of the case stated that he miscalculated the due date, by adding 30 days to the date he *received* the order rather than to the entry date. Attached, as evidence, was a letter written by him on December 28, 1978, reflecting his misunderstanding during the relevant period. The letter stated in part: ". . . we [have] received a court order directing us to identify by January 19, 1978, each individual due back wages and the number of hours for which such wages are due. . . ." Another affidavit indicated that preparation of the answers was delayed by "Segona's three-day delay in providing necessary records which he had agreed to provide." These facts concerning the late filing of the supplemental answers are not disputed by Segona.

By minute order of April 19, 1978, the District Court granted Segona's motion to dismiss with prejudice. The Court stated that the Secretary was in essence "almost a year late" in filing answers, rather than only four days late.[2] And based upon a brief review of the litigation but without reference to the Secretary's affidavits, the Court concluded that the Secretary had "been guilty of such bad faith and of such callous disregard for the Court's orders that this motion to dismiss should be granted."

The final action by the District Court was a minute entry on July 19, 1979, denying the Secretary's motion to reconsider. The

Court there concluded that the Secretary "had a reckless disregard for the order of this Court despite the fact that it had every opportunity to answer . . . and comply with the Court's order well within the time allowed." The Court further characterized the Secretary's failure to comply as "willful." The District Court thus reaffirmed its April 19, 1979, order. The Secretary then perfected this appeal.

### Dismissal As A Sanction

Rule 37(b)(2) provides that: "If a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may make such orders in regard to the failure as are just. . . ." Plainly, the "order" referred to is an order under subsection (a) of that Rule. A number of possible sanctions are set out by Rule 37(b), including: orders that certain facts be taken as established or evidence excluded;[3] that claims or defenses be unopposed or pleadings struck;[4] that reasonable expenses caused by the recalcitrant party be paid;[5] or that the party be held in contempt.[6] And there is also the sanction invoked in this case, dismissal of the law suit.[7]

■ The bandwidth of the District Court's power to impose Rule 37 sanctions is broad indeed. We will not interfere unless important historical findings are clearly erroneous or—by the imposition of sanctions

---

2. The Court was apparently referring to the date of its disposition of Segona's first motion for a more definite statement: June 14, 1978. From that date until January 19, 1979, was, however, only seven months. In fact, the earliest date at which the Secretary was required under the rules of discovery to supply answers was August 29, 1978. From then until January 19, 1979, was less than five months—a long time but not "almost a year." And the plaintiff was not ordered pursuant to F.R.Civ.P. 37(a)— the notice required to effectively warn a party before F.R.Civ.P. 37(b) sanctions can be imposed—to supply supplemental answers until December 14, 1978, and that order did not, of course, require answers until January 15, 1979.

3. F.R.Civ.P. 37(b)(2)(A) & (B). This sanction will be tantamount to dismissal in some cases.

4. F.R.Civ.P. 37(b)(2)(B) & (C). Again this sanction will sometimes have the same effect as dismissal.

5. F.R.Civ.P. 37(b)(2) (unlettered paragraph). *But see* F.R.Civ.Proc. 37(f) (expenses not to be awarded against the United States).

6. F.R.Civ.P. 37(b)(2)(D). "The contempt sanction, though wicked-sounding, is not nearly as drastic a sanction as dismissal." Waterman, *Appellate Judge's Approach When Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pretrial Orders*, 29 F.R.D. 420, 423 (1962).

Where the noncomplying party is a plaintiff (as in the instant case), a stay of further proceedings is another possible sanction. 4 A Moore's Federal Practice ¶ 37.03[.2–6], at 3772 (2d ed 1978).

7. F.R.Civ.P. 37(b)(2)(C).

which are not "just"—there has been an abuse of discretion. We are mindful that the use of even severe sanctions has a salutary deterrent effect on parties to other law suits and their counsel and that great army of yet unknowns who will for one reason or another have cases and counsel. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747, 751 (1976) (per curiam).[8]

We have upheld the use of "the draconian remedy of dismissal" in suitably "extreme circumstances." *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979) (dismissal affirmed where plaintiff three times refused to appear for deposition). *See Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976) (default entered where defendant ignored three orders to produce documents); *Jones v. Louisiana State Bar Association*, 602 F.2d 94 (5th Cir. 1979) (dismissal where plaintiff deliberately refused two orders to produce tape recording and notes which plaintiff admitted possession of); *Venzara v. Continental Training Services, Inc.*, 615 F.2d 919 (5th Cir. 1980) (Fifth Circuit Rule 21 affirmance of default judgments). Two other of our decisions which are similar yet distinguishable are *Factory Air Conditioning Corp. v. Westside Toyota, Inc.*, 579 F.2d 334 (5th Cir. 1978), and *In re Liquid Carbonic Truck Drivers Chemical Poison Litigation*, 580 F.2d 819 (5th Cir. 1978). In the first, the defendant was ordered on May 16 to supplement its interrogatory answers by May 31. Nothing was filed, as the defendant was apparently disregarding the re-

quest of his own attorney for information. On July 20, the District Court entered yet a second order, allowing defendant until July 27 to answer. The plaintiff, on August 10, motioned again for default since as of that date answers had not been filed.[9] The motion was granted by the District Court and we affirmed.

In *Liquid Carbonic*, the suits of five out of nine truck drivers were dismissed for repeated failures to adequately answer interrogatories. Because the five refused to cooperate with their own attorney (and after passage of the F.R.Civ.P. 33 period for answering interrogatories) an order was entered on June 15 which required answers by July 1. Subsequently, plaintiffs were six days late in filing answers. On August 10, the District Court found that the answers, which had been once amended at the Court's prodding, were still vague and incomplete. Accordingly, a second order was entered which allowed until August 15 to submit satisfactory answers. The answers were not filed, however, until August 16 or 17. The District Court dismissed the suits of the five *noncooperating* truck drivers, recounting a number of other discovery violations which had occurred. But the suits of the four truck drivers who had at least cooperated with the attorney were not dismissed. We upheld the dismissals, pointing out that the answers were not filed until 10 days before trial and that numerous other discovery violations occurred.

■■■ But we have also recognized that dismissal is too harsh a sanction where a

---

**8.** In *National Hockey League* the Court considered the use of the most drastic sanction—dismissal—stating that it could be used when the failure to comply was due to "willfulness, bad faith, or . . . fault. . . ." 427 U.S. at 640, 96 S.Ct. at 2779, 49 L.Ed.2d at 749 (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255, 1267 (1958)). There the plaintiffs disregarded more than three Court orders to supplement interrogatory answers, and a year after the first order had not filed adequate answers. The answers were crucial to the defense and delay effectively prevented adequate discovery by the defendants since the inadequate answers were filed *after* the defendants' discovery cutoff date. *See In re Professional Hockey Anti-*

*trust Litigation*, 63 F.R.D. 641, 643–55 (E.D.Pa. 1974). Accordingly, the District Court found the plaintiffs guilty of "callous disregard" of their responsibilities and of "flagrant bad faith" in their overall conduct. *Id.* at 656. The District Court reluctantly invoked the sanction of dismissal. The Court of Appeals overturned the dismissal sanction. Because the facts demonstrated no abuse of discretion, the Supreme Court reversed and upheld the dismissal.

**9.** The propriety of a default judgment is evaluated by the same standards as the sanction of dismissal. *United Artists Corp. v. Freeman*, 605 F.2d 854, 856–57 (5th Cir. 1979) (per curiam).

number of factors, singly or in combination, are present, or where the District Court's relevant findings of historical fact are clearly erroneous. First, dismissal is to be sparingly used and only in situations where its deterrent value cannot be substantially achieved by use of less drastic sanctions.[10] Whether the other party's preparation for trial was substantially prejudiced is a consideration.[11] "Dismissal is generally inappropriate and lesser sanctions are favored where neglect is plainly attributable to an attorney rather than to his blameless client."[12] Nor does a party's simple negligence, grounded in confusion or sincere misunderstanding of the Court's orders, warrant dismissal.[13] Finally, the Rule "should not be construed to authorize dismissal . . when it has been established that failure to comply has been due to inability . . .," *National Hockey League, supra,* 427 U.S. at 640, 96 S.Ct. at 2779, 49 L.Ed.2d at 749, such as where requested information is not yet available, though it will later become so.[14]

Present in this appeal in varying proportions are all of the factors which make dismissal inappropriate. We are furthermore of the "definite and firm convic-tion"[15] that there was clear error in the District Court's perception of the facts relating to the amount of time during which the Secretary was obligated to supply the wage and hour information. *See* notes 2 and 3 and accompanying text *supra.* The record clearly shows that the Secretary was not under any F.R.Civ.P. 37(a) order until December 14, 1978. Even as of that date, good faith though partial compliance with Segona's discovery request had occurred since some 27 names and respective employment dates had been delivered.[16] The Secretary did not receive this order, with its thirty-day requirement, until December 19, 1978. As reflected by the third count of the Secretary's complaint, the inadequate state of Segona's wage and hour records made it most difficult for the Secretary to answer the interrogatories within the thirty days.[17] And Segona was also partly responsible for the Secretary's missing the final deadline—by four days—set for the filing of supplemental answers.

There is also uncontroverted evidence that the Secretary's four-day noncompliance was caused by the good faith, sincere, but mistaken interpretation of the correct

10.  *Griffin v. Aluminum Co. of America,* 564 F.2d 1171 (5th Cir. 1977); *Anderson v. Nosser,* 438 F.2d 183 (5th Cir. 1971), *modified on other grounds,* 456 F.2d 835 (5th Cir. 1972) (en banc); *Diaz v. Southern Drilling Co.,* 427 F.2d 1118 (5th Cir.), *cert. denied sub nom., Trefina, A.G. v. United States,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970).

11.  *Silas v. Sears, Roebuck & Co.,* 586 F.2d 382 (5th Cir. 1978). *See Edgar v. Slaughter,* 548 F.2d 770 (8th Cir. 1971).

12.  *Silas v. Sears, Roebuck & Co., supra,* 586 F.2d at 385. *See also, e. g., Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 889 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Pond v. Braniff Airways, Inc.,* 453 F.2d 347 (5th Cir. 1972); *Hassenflu v. Pyke,* 491 F.2d 1094 (5th Cir. 1974).

13.  *United Artists Corp. v. Freeman, supra. See* Advisory Committee Note of 1970 to Amended Rule 37, *reprinted in* 4A Moore's Federal Practice, *supra,* ¶ 37.01[8], at 3727 (" 'Willfulness' continues to play a role . . . in the choice of factors."). *Cf. Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062 (2d Cir. 1979).

14.  *Dorsey v. Academy Moving & Storage, Inc.,* 423 F.2d 858 (5th Cir. 1970); *Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408 (9th Cir. 1978). *Cf. Read v. Ulmer,* 308 F.2d 915 (5th Cir. 1962) (default judgment).

15.  *Cf. Dorey v. Dorey,* 609 F.2d 1128, 1136 (5th Cir.) (quoting from other cases), *rehearing en banc denied,* 613 F.2d 314 (5th Cir. 1980).

16.  We furthermore observe that the Secretary's August 29 responses to interrogatories numbered one through four may be viewed as objections, properly made under F.R.Civ.P. 33(a). Segona's subsequent motion set in motion the overruling of those objections, but that was not done until the District Court's December 14 order. Viewed in this context, and contrary to the District Court's characterization, the Secretary's *only* actual discovery violation was its mistaken and inadvertent four-day noncompliance with the December 14 order.

17.  We do not of course say that mere allegation of inadequate records excuses the plaintiff from compliance with discovery rules.

deadline of the District Court's order. This was at most simple negligence—a failure to completely understand the Court's order—and even then was negligence of the Secretary's lawyer, not the Secretary. It is also significant, though not controlling, that Segona was not prejudiced by the Secretary's inability to compile the wage and hour information. No discovery cutoff was even scheduled until March 1979, and as early as August 1978, Segona knew the names of 27 affected employees.

These facts clearly show that the Secretary's noncompliance was in part due to inability to comply, was done not in bad faith nor callous disregard, did not prejudice the defendant, and was manifestly the fault of the lawyer rather than the client, if fault there was. These factors in combination indicate that we ought not to approve the District Court's dismissing the Secretary's law suit.

■ We do not mean to imply that the Secretary's counsel handled this case with diligent competence. But here the District Court improperly imposed "the sanction of last resort." [18] We realize that because of F.R.Civ.P. 37(f)'s exemption for the Federal Government, an award of expenses and fees was not available as a lesser sanction. The lack of this sanction does not mean that dismissal can be more freely used against the United States Government, however. *But cf.* Note, *Preferential Treatment of the United States Under Federal Civil Discovery Procedures*, 13 Ga.L.Rev. 550 (1979). Dismissal, even of suits by the United States Government, should be used in only egregious cases.

We intimate nothing about the imposition of effectively lesser sanctions in this case after remand to the District Court.

REVERSED and REMANDED FOR FURTHER PROCEEDINGS.

---

18. *Griffin v. Aluminum Co. of America, supra,* 564 F.2d at 1173 n.3.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.