NIES, Circuit Judge:
Sidney L. Jaffe, Meadow Valley Ranchos, Inc., Atlantic Commercial Development Corp., and Ruby Mountain Construction and Development Corp. appeal the judgment of the United States District Court for the Middle District of Florida (Jacksonville Division, John H. Moore, J.) awarding Charles Grant, trustee in bankruptcy for Continental Southeast Land Corp., the sum of $3 million plus interest. Trustee Grant had received a state court judgment of that amount which is the basis for the district court’s judgment here. Jaffe et al. assert a number of errors by the district court in giving full faith and credit and the effect of res judicata to the state court judgment. We affirm.

Background

The genesis of this action occurred in 1972 when Continental Southeast Land Corporation bought a large tract of Florida land, subdivided it into more than 2800 lots, and began selling the lots to individuals on installment contracts payable to Continental. At the same time Continental was borrowing from individual investors. Sidney Jaffe was vice-president of Continental. Through a series of transactions in 1976 and 1977, Continental’s interests in the remaining land and the vendee accounts were transferred to Meadow Valley Ranchos, Inc., Ruby Mountain Construction & Development Corp., and Atlantic Commercial Development Corp. (collectively, the corporations). Sidney Jaffe was president of each corporation. Shortly thereafter Continental defaulted on payments to its investors. The investors responded by filing suit in the Circuit Court of Putnam County, Florida, against Continental and the corporations to set aside the transfers of land and the vendee contracts as fraudulent and to appoint a receiver for Continental. Barbara Raymond et al. v.. Continental Southeast Land Corp., No. 78-416.
In June, 1979, Jaffe caused Continental to file a Chapter XI petition under the Bankruptcy Act. In January, 1980, the *1185 bankruptcy court adjudicated Continental bankrupt and appointed Charles Grant, the appellee herein, as trustee. After the bankruptcy court lifted the statutory automatic stay, the state court in the Raymond case substituted the trustee Grant for Continental and realigned him as a plaintiff. In March, 1981, the state court entered a final default judgment setting aside the transfers, holding the corporations liable to return the sums collected from the contract vendees and ordering an accounting. The corporations appealed the state court’s March, 1981, order. In the interim, they refused to make the accounting and were held in contempt by the trial court. Because of their continuing contempt, the appellate court dismissed the appeal. Atlantic Commercial Development Corp. v. Raymond, No. 81-560 (Fla. 5th Dist.Ct. App. Sept. 10, 1981).
Meanwhile, Jaffe had been arrested and charged with failure to deliver deeds to lot purchasers in violation of the Florida Uniform Land Sales Practices Law.[1] On May 15, 1981, the eve of his criminal trial, Jaffe and the corporations filed the subject action in the United States District Court for the Middle District of Florida charging that trustee Grant and others had conspired to violate their civil rights and seeking to restrain the state criminal case. Trustee Grant responded, inter alia, with a counterclaim seeking enforcement of the Raymond judgment for an accounting against Jaffe individually as well as against the corporations on the ground that the corporations were merely his alter egos.
During the course of these proceedings, trustee Grant moved for sanctions for Jaffe's failure to appear at scheduled depositions. The district court granted the motion and awarded attorney fees. When the attorney fees were not paid as ordered, trustee Grant filed a renewed motion for sanctions, resulting in an additional award for fees incurred in connection with Grant’s seeking compliance with the first order. During this time, Jaffe et al. had also failed to timely comply with the court’s order directing them to respond to the trustee’s interrogatories and request for production. Jaffe et al. did respond four days late, but in an incomplete and evasive manner, refusing to answer certain interrogatories and to produce certain documents. The court entered an order compelling them to produce the documents and answer the interrogatories. Their responses were again non-responsive, evasive and incomplete. Again Grant moved for sanctions, this time asking that Jaffe et al.’s answer to the counterclaim be stricken. No action was taken by the court on the motion at that time.
At the sentencing hearing at his criminal trial, Jaffe indicated that he would voluntarily dismiss the instant action. When the offer was made in this action, the trustee Grant refused to agree to dismissal unless Jaffe paid the trustee’s reasonable costs and attorney fees. With that condition, the district court dismissed the complaint and also dismissed without prejudice the trustee’s counterclaim for enforcement of the state court judgment. The trustee moved for reconsideration seeking to have counterclaim reinstated. By order of August 12, 1982, the district court reinstated the trustee’s counterclaim noting that jurisdiction over the counterclaim, based on diversity, was independent of jurisdiction over the dismissed complaint. In that same order, the court granted the trustee’s renewed motion for sanctions “in light of [plaintiffs’] flagrant and continued failure to comply with discovery requests and Court orders.” The court, however, withheld ruling on what the sanction should be. Jaffe et al. took no action to cure their *1186 failure to comply with the court’s orders. After a hearing, the district court struck Jaffe et al.’s answers to the trustee’s counterclaim and entered judgment by default.
In the Raymond action, which was again before the state trial court, Grant served a request for admission that the corporations had received more than $3 million from contract vendees of Continental. Again, the corporations evaded and Grant moved to strike their answers to the discovery request as a sanction. After a hearing, the state court struck the corporations’ responses because of their evasive nature and deemed the request with respect to the $3 million figure admitted. On appeal of that ruling, the Florida appellate court affirmed. Ruby Mountain Construction & Development Corp. v. Raymond, 409 So.2d 525 (Fla. 5th Dist.Ct.App.1982). The state trial court then granted the trustee’s motion for summary judgment and entered a Supplemental Final Judgment in the amount of $3 million plus interest. The corporations appealed but their appeal was dismissed as frivolous, with attorney fees for a bad faith appeal being assessed. Atlantic Commercial Development Corp. v. Raymond, No. 82-724 (Fla. 5th Dist.Ct. App. June 30, 1982). Accordingly, the Supplemental Final Judgment became final and non-appealable.
Grant then moved that the district court enter a damage award against Jaffe et al. jointly and severally in favor of the trustee for $3 million plus interest based on the state court Supplemental Final Judgment. Judgment in this amount was entered on October 2, 1984. Jaffe et al. timely appealed the decision of the district court to this court.
I.

Jurisdiction

As a threshold matter, Jaffe et al. assert that the district court did not have subject matter jurisdiction over the trustee’s counterclaim because the parties had purportedly settled the trustee’s claim in the bankruptcy proceeding and, in any event, the parties had agreed to have the bankruptcy court resolve any further disputes between them. The district court held that the “settlement” agreement did not deprive it of jurisdiction:
[Djespite plaintiffs’ attempts to characterize the security agreement as constituting a full and complete compromise and settlement of all of the disputes between the parties, the agreement provides on its face that it was to be merely an executory accord until performed by all parties and the parties further agreed that the statute of limitations on defendant GRANT’S claim against plaintiffs would be tolled during the period of performance of that agreement. Therefore, defendant GRANT was not barred by the settlement agreement from asserting, after the plaintiff corporations’ breach of that settlement agreement, all claims he had to the fraudulently conveyed property. E.g., Hannah v. James A. Ryder Corp., 380 So.2d 507 (Fla. 3d Dist.Ct. App.1980).
Plaintiffs also claim the bankruptcy court had the sole jurisdiction to determine the effect of the settlement agreement. The settlement agreement does provide that [corporate plaintiffs] submit to the jurisdiction of the bankruptcy court for purpose of settling their disputes with the trustee arising out of any breach of settlement agreement and any such claim “may” be brought in the bankruptcy court. Nothing in the settlement agreement provided that the bankruptcy court would have exclusive jurisdiction over any disputes arising out of the breach of the settlement agreement and such a determination would be inconsistent with the executory accord language of the settlement agreement. Moreover, the record reflects that after entry of the final default judgment but prior to entry of the supplemental final judgment, plaintiffs filed an action in the bankruptcy court against defendant GRANT, alleging that he breached the settlement agreement. As noted above, that action was dismissed with prejudice for the plaintiff corporations’ failure— *1187 specifically the failure of Sidney L. Jaffe as president of each of the plaintiff corporations — to submit to discovery.
Jaffe et al. have not tried to bolster the argument made below and do not address the findings or conclusions of the district court. We are unpersuaded that the district court’s analysis of this issue was erroneous, factually or as a matter of law.
Jaffe et al. also contend that the district court had no jurisdiction to “reinstate” the counterclaim because the trustee’s counterclaim was never effectively filed. The basis for this argument is that the trustee filed his answer containing the counterclaim “subject to” his earlier filed motion to dismiss. Per Jaffe et al., at the time they withdrew their complaint, Grant had not yet filed his answer so that they had a right to withdraw under Fed.R.Civ.P. 41(a).. Under this theory the court had not acquired jurisdiction over the counterclaim and, thus, could not “reinstate” it.
The trustee states that he filed his answer “subject to” his motion to dismiss merely to avoid waiving that motion by filing his answer; that Jaffe et al. answered the counterclaim and never asserted to the district court that the counterclaim had not been filed; and that Rule 41(a)(2) specifically contemplates that a complaint may be dismissed while a counterclaim remains pending.
Under the circumstances, we conclude that the district court did not err in treating the counterclaim as filed. Further, since the trustee’s counterclaim had an independent jurisdictional basis, the court had erred in dismissing it. Deauville Corp. v. Garden Suburbs Golf & Country Club, 165 F.2d 431 (5th Cir.1948); accord Ferguson v. Eakle, 492 F.2d 26 (3d Cir. 1974); 9 C. Wright & A. Miller, Federal Practice & Procedure, § 2365 (1971); 5 J. Moore, Moore’s Federal Practice, § 41.09 (2d ed. 1985). Thus, the counterclaim was properly reinstated.
II.

Effect of State Court Judgment

The judgment of a state court is entitled to full faith and credit under Article IV, Section 1, United States Constitution and by 28 U.S.C. § 1738. Jaffe et al., nevertheless, assert that the Raymond Supplemental Final Judgment may be collaterally attacked in these proceedings.
First, Jaffe et al. assert that the state civil judgment was not an “adjudication on the merits” for res judicata purposes because there was no “trial on the merits.” As sanctions for discovery abuses, the state court struck responses to the trustee’s requests for admissions and deemed the statements admitted. Jaffe et al. insist that the state court judgment results from the deemed admissions which under Florida R.Civ.P. 1.370(b) and Fed.R. Civ.P. 36(b) have effect only in that litigation. Contrary to Jaffe’s analysis, the district court did not give effect to an admission, but rather full faith and credit to a state court judgment, as required by statute and the Constitution.
Next, Jaffe et al. argue that the state court judgment is void because it stemmed from orders that were entered during the time that the state court proceeding was automatically stayed by the bankruptcy proceeding. We agree with the district court that that argument:
is simply an attempt to extend beyond all rational bounds the legal principle that a judgment entered without subject matter jurisdiction is void and may be subject to collateral attack. The undisputed fact is that the Barbara Raymond court had subject matter jurisdiction on March 10, 1981, when it entered the Final Default Judgment and on April 27, 1982, when it entered the Supplemental Final Judgment. Therefore, even if plaintiffs were correct and the Barbara Raymond court erred in relying upon the plaintiffs’ failure to comply with the previous orders in entering the Final Default Judgment, that error is not a jurisdictional matter and could only have been corrected, if at all, on direct appeal. See Parker Bros. v. Fagan, 68 F.2d 616, 618 (5th Cir.1934); *1188 Malone v. Meres, [91 Fla. 709], 109 So. 677, 684-89 (Fla.1926).
Jaffe et al. also assert that, because they were held in default, they have been unable to litigate the issue of the jurisdiction of the state court and, thus, they may raise the jurisdictional issue against enforcement of the judgment in this proceeding. Jaffe et al.’s analysis is flawed in that this case involves res judicata in the sense of claim preclusion, not collateral estoppel (or issue preclusion). Thus, contrary to Jaffe et al.’s assertion, the determinative factor here is not whether the issue was litigated, but whether Jaffe et al. had an opportunity to litigate the matter. AGB Oil Co. v. Crystal Exploration & Production Co., 406 So.2d 1165, 1167-68 (Fla. 3d Dist.Ct.App.1981). As the district court stated:
Plaintiffs’ contention that the supplemental final judgment is unenforceable because there was no “trial on the merits” is particularly disengenuous in view of the fact that it was the plaintiff corporations’ own misconduct in the state court action which prevented any trial on the merits and caused the entry of the $3 million judgment against them.
In any event, a state court judgment must be given the res judicata effect required under that state’s governing precedent. Parsons Steel, Inc. v. First Alabama Bank, — U.S. -, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). Jaffe has cited no pertinent precedent that would lead to .the conclusion that Florida courts would not enforce the subject judgment. On the contrary, in view of the Florida appellate court’s consideration of the proceedings on several occasions, the last affirmance resulting in sanctions for a frivolous appeal, we are wholly unpersuaded that the $3 million judgment is unenforceable in Florida.
Jaffe argues that the state judgment is unenforceable against him personally because he was not formally a party tp the state civil case. However, the district court found that Jaffe was in privity with the corporations, indeed their alter ego, and thus, he is as bound by the Supplemental Final Judgment as the corporations.[2] Mendelsund v. Southem-Aire Coats, 210 So.2d 229 (Fla. 3d Dist.Ct.App.1968); accord, Dudley v. Smith, 504 F.2d 979, 982-83 (5th Cir.1974). Jaffe argues that the court’s finding flows only from the striking of its answer, not from evidence. Unless the striking was error, and we conclude infra it was not, the finding must stand.
III.

Recusal

Jaffe et al. assert that the district court abused its discretion by denying their motion for Judge Moore to disqualify himself under 28 U.S.C. § 455 (1982).[3] Jaffe et al. see prejudice against Jaffe in statements the trial judge made from the bench during a status conference.
The standard for disqualification under § 455 has been stated as follows:
It is well settled that under either Section 144 or Section 455 an allegation of bias sufficient to require disqualification must demonstrate that the bias is personal as distinguished from judicial in nature. The alleged bias and prejudice, in order to be personal and therefore disqualifying, “must stem from an extrajudicial source and result in an opinion on *1189 the merits on some basis other than what the judge learned from his participation in the case.” United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Thus, a motion for recusal may not ordinarily be predicated upon the judge’s rulings in the same or a related case. An exception to the general rule that the disqualifying bias must stem from extrajudicial sources is the situation in which “such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party.” Davis v. Board of School Comm ’rs, supra, 517 F.2d [1044] at 1051 [(5th Cir.1975)].
United States v. Phillips, 664 F.2d 971, 1002-03 (5th Cir., Unit B 1981) (footnotes omitted).
In this case, the court’s statements reflect its perception of the underlying facts of the case, Jaffe et al.’s litigation tactics, and their incessant changing of attorneys. The district court’s statements were based on knowledge the court had gained in a purely judicial context by presiding over this action and a habeas corpus proceeding filed by the Canadian government.[4] Thus, the statements are not a basis for recusal unless they demonstrate pervasive bias and prejudice against Jaffe. We are not persuaded that the instant circumstances are of such an extreme nature that the statements demonstrate pervasive bias and prejudice. The trial court did not abuse its discretion by denying Jaffe’s recusal motion.
IV.

Sanctions

As sanctions, pursuant to Fed.R.Civ.P. 37(b)(2), for Jaffe et al.’s refusal to comply with discovery orders, the district court entered an order striking their answer and defenses to the trustee’s counterclaim. Jaffe et al. argue that the imposition of these draconian sanctions was unwarranted. However severe the sanctions though, “[w]e will not interfere unless important historical findings are clearly erroneous or — by the imposition of sanctions which are not ‘just’ — there has been an abuse of discretion.” Marshall v. Segona, 621 F.2d 763, 767 (5th Cir.1980).
Jaffe et al. proffer a laundry list of reasons why the sanctions imposed below are too harsh.[5] Their first argument, perhaps the nadir of this frivolous collection, is that the deterrent value of the sanction could have been substantially achieved by use of one less drastic. See Id. at 768. At oral argument, counsel suggested that an award of costs might have been appropriate. However, such a suggestion flies in the face of the record as well as the facts found by the district court:
It should be further noted that sanctions in the form of attorneys’ fees have twice been imposed on Plaintiffs during the course of this litigation. On January 25, 1982, attorneys’ fees were taxed against Plaintiffs for their unjustified failure to attend scheduled depositions. Plaintiffs did not timely pay Defendants the fees imposed by the Court as sanctions and, therefore, further sanctions were imposed against Plaintiffs on February 16, 1982.
It is abundantly clear to the Court that the lesser sanctions contemplated by Rule 37, Fed.R.Civ.P., are not effective in compelling Plaintiffs to conduct discovery in a timely and responsive manner.
Jaffe et al. do not challenge these findings as clearly erroneous. No basis exists for *1190 the argument that less drastic sanctions would have been appropriate.
Jaffe et al. next argue that imposition of any sanctions was inappropriate because the trustee suffered no prejudice from their failure to respond to the trustee’s requests for admissions, relying on Marshall v. Segona, 621 F.2d at 768. Jaffe et al. base their assertion of no prejudice on a statement of the trustee, in his motion to reconsider striking the counterclaim, that “[t]he Counterclaim is presently at issue and ready to be set for pretrial conference and trial.” They reason that the trustee could not have been prejudiced by a failure to respond to discovery if he was ready to go to trial. In making this argument, Jaffe et al. ask us to examine one statement out of context and ignore all the surrounding circumstances. This we refuse to do. At the time the trustee’s attorney made that statement, the trustee was vigorously attempting to pry from Jaffe et al. information concerning the amount of funds they had received from Continental’s contract vendees. The subject requests for admissions remained unanswered when the trial court imposed sanctions. In view of the above circumstances, the assertion that the trustee suffered no prejudice is patently frivolous.
Jaffe et al. seek to place the blame for their longstanding refusal to comply with discovery on one of their former attorneys. See Id. They claim that this attorney has possession of the documents sought by Grant. Jaffe et al. also argue that their failure to comply with the court’s orders was due to inability. See Id. Purportedly Jaffe was prevented from complying by his health problems and, later, incarceration at various correctional institutions. However, neither of Jaffe’s alleged problems can excuse repeated nonresponsive, evasive and incomplete answers to interrogatories and requests for admissions. For example, Jaffe’s alleged problems with his health, incarceration and attorneys cannot excuse the intentional misconduct of producing documents with critical portions torn off.
In sum, Jaffe et al. have failed to establish that the district court abused its discretion in imposing the sanction of striking their answer to the counterclaim.
V.
The arguments of Jaffe et al. that the proceedings lacked due process, in the main amount, to no more than assertions of the above arguments in different garb.[6] Jaffe et al. received not only the minimum process that was due, but also a great deal more.
We AFFIRM the decision of the district court.

. Jaffe did not appear for trial in the criminal case, see Accredited Surety & Casualty Co. v. State, 418 So.2d 378 (Fla. 5th Dist.Ct.App.1982), and was convicted of failure to appear as well as the Land Sales Act violations. The land sales convictions were overturned on appeal, but the failure to appear conviction was upheld. Jaffe v. State, 438 So.2d 72 (Fla. 5th Dist.Ct.App. 1983). Jaffe’s partial victory in the Court of Appeals may prove pyrrhic, however; Jaffe was subsequently charged with organized fraud. See Jaffe v. Sanders, 463 So.2d 318 (Fla. 5th Dist.Ct.App.1985).

. Jaffe et al. also challenge the district court’s purported application of res judicata to the state court criminal judgment which was later reversed-in-part on appeal. Jaffe et al. have, made no attempt to show that res judicata was applied below to the state criminal judgment. Rather, the district court accorded res judicata effect to the state civil judgment.-

. Jaffe et al. allege violation of 28. U.S.C. §§ 455(a) and (b)(1), which state:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding____

. Factual knowledge gained during earlier participation in judicial proceedings involving the same party is not sufficient to require a judge’s recusal. In re Corrugated. Container Antitrust Litigation, 614 F.2d 958, 965 (5th Cir.), cert. denied sub nom., Mead Corporation v. Adamas Extract, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).

. The arguments address each factor identified in Marshall v. Segona, 621 F.2d at 768, for determining whether the sanction of dismissal is too harsh for a particular case. The court in Marshall recognized that striking pleadings will sometimes, as here, have the same effect as dismissal. Id. at 766 n. 4. Accordingly, it is appropriate to look at those same factors here, where the court’s imposition of sanctions resulted in judgment for the trustee.

. Appellants’ argument with respect to the fifth amendment privilege against self-incrimination is obscure and appears to be advanced in support of their due process argument. On this issue, the district court held, inter alia, that any privilege was waived "by plaintiffs’ failure to timely assert such privilege in response to defendant GRANT’S discovery or even prior to the hearing on all pending discovery motions before the magistrate on September 4, 1984.” Appellants assert no error with respect to when the privilege was first raised before the district court. Nor do they argue the court was wrong as a matter of law in holding that the privilege must be timely raised. In any event, we discern no error in the court’s ruling. United States v. Kordel, 397 U.S. 1, 10, 90 S.Ct. 763, 768-69, 25 L.Ed.2d 1 (1970).