540 So.2d 630 (1989)
Audrey Ellis HAPGOOD
v.
BILOXI REGIONAL MEDICAL CENTER and Malcolm L. Latour, M.D.
No. 58274.
Supreme Court of Mississippi.
February 22, 1989.
Rehearing Denied April 19, 1989.
*631 Laurie S. Caldwell, Gulfport, for appellant.
Fred Mannino, Page Mannino & Peresich, Biloxi, Joe R. Colingo, Thomas L. Stennis, II, L. Christopher Breard, Bryant, Stennis & Colingo, Gulfport, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
PRATHER, Justice, for the Court:
The plaintiff below, Audrey Ellis Hapgood, brought this action in the Circuit Court of Jackson County alleging false imprisonment and negligence against Malcolm L. Latour, the admitting and treating doctor, and Biloxi Regional Medical Center, treatment hospital. She alleged that the co-defendants had submitted her to hospitalization, psychiatric evaluation and electroshock treatments against her will. The trial court granted summary judgment as to both defendants, finding that there was no genuine issue of material fact, and on a motion to dismiss, the plaintiff's failure to comply with discovery. The plaintiff now perfects this appeal and assigns as error the following:
I. The Trial Court Erred in Sustaining the Appellee Malcolm L. Latour's Motion to Dismiss the Appellant's Cause of Action Based on the Appellant's Failure to Comply with Discovery.
II. The Trial Court Erred in Sustaining the Appellee Biloxi Regional Medical Center's Motion to Dismiss the Appellant's Cause of Action Based on the Appellant's Failure to Comply with Discovery.
III. The Trial Court Erred in Sustaining the Appellee Malcolm L. Latour's Motion for Summary Judgment Based on the Ground that there was No Genuine Issue as to Any Material Fact.
IV. The Trial Court Erred in Sustaining the Appellee Biloxi Regional Medical Center's Motion for Summary Based on the Ground that there was No Genuine Issue as to Any Material Fact.

I.
On August 30, 1981, Audrey Ellis Hapgood was admitted to the psychiatric ward of the Biloxi Regional Medical Center by Dr. Malcolm L. Latour, M.D. The appellant was admitted to the hospital against her will where she remained for approximately two and one-half months at the request of her husband, William Hapgood, and with the approval of Dr. Latour. Dr. Latour diagnosed the appellant as having a schizophrenic reaction of the acute paranoid type. During her stay at the hospital, it is undisputed that she received fifteen electroconvulsive treatments. Although allowed to leave the hospital periodically with a pass from Dr. Latour, the appellant was not officially discharged until November 14, 1981.
*632 The appellant filed this complaint on August 29, 1983. William Hapgood was deceased at the time of filing suit. Extensive discovery was then undertaken by all parties to the lawsuit. In a hearing held on September 14, 1984, the trial court imposed sanctions on the appellant in the amount of $500 as to each of the appellees for her failure to comply with discovery or "to do anything" and further ordered her to respond to all discovery requests by October 5, 1984. The appellees filed a motion for summary judgment, supported by affidavits from Dr. Latour, Dr. William Martin Wood, Dr. Claudell Brown and Dr. Henry A. Maggio, all psychiatrists. On October 4, 1984, the appellant filed an answer to Dr. Latour's motion for summary judgment with attached affidavits from herself, Dr. Joseph Tramontana, Ph.D., and Dr. Gray Hilsman, M.D. In response to interrogatories requesting a description of records that supported her allegations, the appellant listed the personal diaries and journals of William Foss Hapgood, her former and now deceased husband. In response to a request for production by the appellees, the appellant attached copies of portions of the spiral-bound diaries of William Hapgood.
On October 5, 1984, the court heard the motions to dismiss and for summary judgment. The court found that the appellant's false imprisonment allegations were barred by the statute of limitations, Miss. Code Ann. § 15-1-35 (1972, as amended) and both appellees were granted partial summary judgment on that issue. No other rulings were made at that time.
On May 15, 1985, a separate request for production of documents was filed by Dr. Latour requesting that the appellant produce the originals of all journals and/or diaries of William Hapgood. The appellant had produced copies of the diaries, which were objected to by the appellees because they were not the original diaries. The court granted a continuance to all parties on August 19, 1985. On October 7, 1985, the appellant filed an answer to the request for production of documents as propounded by Dr. Latour.
In her answer, she alleged that she could not produce the originals of all journals and/or diaries of William Hapgood because they were no longer in her care, custody or control, but that she had produced true and correct copies of all such documents. The court ordered the appellant to produce the original diaries by January 25, 1986. On January 27, 1986, the appellant filed a motion to suspend the court's order compelling discovery, alleging that the diaries were no longer in her possession and control, and that it would be dangerous for her to travel to Ireland to retrieve them.
On February 13, 1986, the court overruled the appellant's motion to reconsider its previous order compelling her to produce the original diaries of William Hapgood, and ordered her to produce the diaries on or before March 4, 1986, or the appellant's cause would be dismissed with prejudice. The appellant filed another motion to suspend the order on February 26, 1986, alleging by affidavit that she was unable to travel to Ireland because of physical problems, financial hardship and the theft of her passport. She also reasserted the dangers of travel in that country, and asserted the availability to the appellees of copies of the spiral-bound diaries.
A hearing was conducted by the court on the second motion to suspend on February 28, 1986. The appellant testified that she had given the diaries to an unidentified third party in Mississippi to be delivered to an unidentified member of her family in Ireland. The diaries were sent to Ireland prior to the initiation of the lawsuit, because the appellant claimed her ex-husband had threatened to kill her to get the diaries back. She also testified that she had requested a return of the diaries by telephone, but her family refused to return them because they feared for the appellant's safety if she were found in possession of the diaries. The appellant further testified that she could not afford to go to Ireland, that her health would be endangered if she travelled there, and that her family had also advised her that they would not give her the diaries if she came looking for them.
The court overruled the appellant's motion and ordered her to produce the original diaries of William Hapgood by March 3, *633 1986, or suffer dismissal. However, the court stated that the deadline would be extended until May 1, 1986 if the appellant provided the court with an affidavit of her intent to produce the diaries. The appellant filed this affidavit on March 3, 1986, indicating that she intended to travel to northern Ireland to retrieve the diaries.
On the May 1 deadline, the appellant's attorney of record at the time filed a motion to withdraw and substitute the appellant's current attorney of record as counsel. On May 12, 1986, the appellees filed motions to dismiss for failure to respond to discovery, or in the alternative for summary judgment. The appellant filed an answer to these motions, stating by affidavit that she had travelled to northern Ireland to retrieve the diaries, but was unable to do so because her sister refused to divulge the whereabouts of the diaries or to return them to the appellant. A hearing was held on May 21, 1986, and the court ruled that the case had been dismissed with prejudice pursuant to the court's previous order which was self-executing. An order was entered in May 21, 1986, allowing the appellant's present attorney of record to be substituted as counsel.
On May 23, 1986, the court entered an order setting aside all orders dismissing the cause and staying all further proceedings pending a hearing to determine the competency of the appellant. On June 27, 1986, an order was issued which held that the appellant was competent. On August 22, 1986, a reinstatement of the judgment of dismissal was entered by the court on the grounds that the discovery had not been complied with by the appellant and that there was no genuine issue as to any material fact.

II.

DID THE TRIAL COURT ERR IN SUSTAINING THE APPELLEE MALCOLM L. LATOUR'S MOTION TO DISMISS THE APPELLANT'S CAUSE OF ACTION BASED ON THE APPELLANT'S FAILURE TO COMPLY WITH DISCOVERY?
Rule 37 of the Miss.R.Civ.Proc. addresses the imposition of sanctions for failure to make or cooperate in discovery. Following a party's motion for an order to compel discovery, the trial court may in its discretion impose sanctions on the non-cooperative party. Rule 37(b) addresses the failure to comply with the court's order and is as follows:
(b) Failure to Comply With Order
(1) Sanctions by Court. If a deponent fails to be sworn or to answer a question after being directed to do so by the court, the failure may be considered a contempt of court.
(2) Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify in behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
(C) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
(D) in lieu of any of the foregoing orders or in addition thereto, an order treating as contempt of court the failure to obey any orders.
In lieu of any of the foregoing orders or in addition, thereto, the court shall require *634 the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Although Rule 37(b)(2)(C) allows the dismissal of the pending action as a form of sanction, it is obviously the most drastic sanction available. Resort to such a remedy has been described by various courts as "Draconian" or a "remedy of the last resort," Nissho-Iwai American Corporation v. Kline, 845 F.2d 1300, 1304 (5th Cir.1988); therefore, it has generally been held that a trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.
Under certain circumstances, this Court has held that dismissal of a cause of action for failure to comply with discovery is appropriate, Williams v. Puryear, 515 So.2d 1231 (Miss. 1987); however, this Court has also held under certain circumstances, that dismissal for failure to comply with discovery was not proper. White v. White, 509 So.2d 205, 209-210 (Miss. 1987). Although trial courts are authorized to dismiss cases when such action is justified, their reason for doing so must always be examined by an appellate court.
Any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, but the reason for the failure is an important consideration in determining what sanction to impose. If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, unless severe sanctions are the most that can be invoked.
8 C. Wright and A. Miller, Federal Practice and Procedure, § 2284 (1970).
A recent decision by the Fifth Circuit is very helpful in assessing what sanctions should be imposed for failure to comply with discovery.
In determining whether a district court abused its discretion, our precedent has addressed a number of considerations. First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. National Hockey League v. Metropolitan Hockey Club] 427 U.S. [639] at 640, 96 S.Ct. [2778] at 2779 [49 L.Ed.2d 747 (1976)]; see also Marshall v. Segona, 621 F.2d 763, 767, n. 8 (5th Cir.1980). Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Marshall, 621 F.2d at 768. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders. Marshall, 621 F.2d at 768; Silas v. Sears, Roebuck & Co., 586 F.2d 382, 385 (5th Cir.1978).
Batson v. Neal Spelce Associates, Inc., 765 F.2d 511, 514 (5th Cir.1985). See also White, supra.
Based on the facts of this case, this Court holds that dismissal was not proper under these circumstances. Although it is true that the appellant appears to have failed to comply with discovery in a timely manner, there also appear to be other factors at work which explain her partial lack of compliance.
It appears to be well established under both caselaw and other sources, that dismissal for failure to comply with discovery is not proper when this failure to comply with discovery is at least partially predicated upon an inability to comply. Appellant claims that he had threatened to kill her if she did not return the diaries to him. Also, unknown parties had broken into the appellant's trailer and ransacked it, apparently looking for something; certain items were stolen from the trailer as well. The appellant claims that she sent the diaries to Ireland because she feared for her safety. *635 Although she appears to have been unreasonable at times in her reasons for failing to comply with discovery, she undisputedly did make a trip to Ireland to attempt to retrieve the diaries, but her family refused to return them to her. Thus the appellant's claim would fall squarely under the "inability to comply" language of Batson.
The appellant and William Hapgood were divorced on May 11, 1984. She sought the divorce on grounds of cruel and unusual treatment. As part of her evidence in the case, she introduced certain portions of her husband's diary into evidence. He admitted that the copies of the diary introduced into evidence in that case were true and accurate representations of the diary. In the event that the appellant was unable to retrieve the original portions of her ex-husband's diary for the lawsuit pending against Dr. Latour and the hospital, it would seem that the copies of the diary introduced into evidence in the divorce action could be retrieved for use in this case, especially in light of the fact that William Hapgood admitted their accuracy and authenticity. (These copies are apparently in the custody of the court that granted the divorce). It should also be noted that portions of this diary appear in the record of this case, and appear to be mostly legible.
Batson also notes that another consideration for determining what sanctions are proper for failure to comply with discovery is whether or not the other party's preparation for trial was substantially prejudiced. Id. at 514. In the case sub judice, the appellees have introduced no evidence showing why they needed the original portions of the diary, and although they claimed at one point during a hearing that they did have their reasons, they never elaborated upon them. Therefore, there is no evidence before us in the record to indicate in exactly what manner the appellees would be burdened by the introduction of copies of the diary instead of the originals.
It should be noted that the appellant was given until May 1, 1986, to retrieve the original copies of William Hapgood's diary. The appellant flew to Ireland on May 5, 1986, in an effort to retrieve the diaries. Although this was past the deadline granted by the court, there appears to have been justification for doing so. The appellant's passport apparently had been stolen, and she did not receive a new one until April 30, 1986, only two days before the discovery deadline cut-off point. Although her attorney probably should have filed for an extension of time to enable her to comply with the discovery request, he did not do so. In fact, he filed a motion to replace himself as counsel on May 1, 1986, a motion which was eventually granted by the court. Nonetheless, the appellant should not be punished for her attorney's failure to secure an extension of the discovery deadline. See Batson, supra, at 514.
In summation, although the appellant does not appear to be without blame in this case there also appears to have been some justification for her failure to comply with discovery in a timely manner. Therefore, this Court holds that the trial court erred in granting the appellee's motion to dismiss, especially in light of the fact that there were several unique extenuating circumstances present in this case. This assignment of error is meritorious and should be granted by this Court.

III.

DID THE TRIAL COURT ERR IN SUSTAINING THE APPELLEE BILOXI REGIONAL MEDICAL CENTER'S MOTION TO DISMISS THE APPELLANT'S CAUSE OF ACTION BASED ON THE APPELLANT'S FAILURE TO COMPLY WITH DISCOVERY?
Although there may be some question as to the exact extent of the relationship between Dr. Latour and the Biloxi Regional Medical Center, and therefore whether the actions of Dr. Latour can be imputed to the medical center, the record at this point in the proceedings is devoid of any reference to the exact status of their relationship and/or the obligations and responsibilities present between those two parties. See Hardy v. Brantley, 471 So.2d 358 (Miss. 1985). Therefore, it would be premature at this point to allow the Medical *636 Center to be dismissed from this lawsuit.
Aside from this issue, the mode of analysis used under the first assignment of error concerning Dr. Latour is equally applicable to the Medical Center. Therefore, the trial court's dismissal of the appellant's cause of action as to the medical center for failure to comply with discovery was improper. This assignment of error is also meritorious.

IV.

DID THE TRIAL COURT ERR IN SUSTAINING THE APPELLEE MALCOLM LATOUR'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GROUND THAT THERE WAS NO GENUINE ISSUE AS TO ANY MATERIAL FACT?
On August 22, 1986, the Circuit Court reinstated the judgment of dismissal against the appellant. In the order dismissing the cause of action, the court held the following:
And further from a review of the pleadings, affidavits and discovery in this case, the court determines on its own that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.
This Court holds that the trial court erred in reaching such a conclusion.
The leading decision by this Court on the issue of summary judgments is Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). In Brown, the Court noted as a preliminary matter the following:
The motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the Court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.
Id. at 362.
This Court recognized in Brown that when attempting to determine whether there were genuine issues of material fact, the issue is not always clear cut.
When doubt exists whether there is a fact issue, the nonmoving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt... . We recognize that reasonable minds may offer differ on the question of whether there is a genuine issue of material fact. In this context we find appropriate the admonition and a leading commentary on federal Rule 56:
If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. And the problem of overcrowded calendars is not to be solved by summary disposition of issues of fact fairly presented in an action. 6 Moore's Federal Practice § 56.-15[1.-2] p. 56-435 (1982).
Brown at 362-363. See also Magnolia Construction Co., Inc. v. Mississippi Gulf South Engineers, Inc., 518 So.2d 1194, 1199 (Miss. 1988); Brown v. McQuinn, 501 So.2d 1093, 1095 (Miss. 1986).
As this Court has noted earlier, in close cases the benefit of the doubt should be given to the nonmoving party, in this case the appellant. However, the case before this Court now does not present such a close question. This Court is of the opinion that the trial court improvidently granted summary judgment in favor of the appellee Dr. Latour.
In the record before this Court, the appellant introduced the testimony and/or affidavits of two expert witnesses, Dr. Joseph Tramontana, Ph.D. and Dr. Gray Hilsman, M.D. Dr. Tramontana was a clinical psychologist who had treated Audrey Hapgood at various times for mental disorders. Dr. Tramontana had testified in previous cases about commitment procedures and had conducted numerous commitment examinations. In deposition testimony, Dr. Tramontana stated that he did not fully agree with Dr. Latour's treatment and/or assessment of Mrs. Hapgood's condition. He also testified that his understanding of *637 commitment procedures differed from those followed in this case.
The second witness relied on by the appellant was Dr. Gray Hilsman, the head of psychiatry at St. Dominic's Hospital in Jackson, Mississippi. Dr. Hilsman testified that during his interviews with the appellant, he considered her to be an eccentric but not psychotic. He also testified that he considered the diaries and pictures accompanying the diaries of William Hapgood to add credibility to the appellant's claim. He also stated that in his opinion the appellant's commitment to the hospital and the procedures used for her electro shock treatments were not the procedures that he himself would have used. Dr. Hilsman also testified that although he could not say with certainty if the procedures used were improper according to the statutes as found in Miss. Code Ann., he did state that he felt in many ways they were questionable.
Also in the record before this Court are copies of William Hapgood's diaries. As part of the appellant's claim against Dr. Latour and the hospital, she claimed that her ex-husband's background was not checked into properly before allowing him to commit her to the hospital. There is no way of knowing at this point in the litigation whether or not Dr. Latour and/or the hospital, should have known about William Hapgood's alleged mental irregularities, but this Court holds that the appellant should be allowed to attempt to prove her case in court.
It has not been disputed by the appellees in this case that the appellant was committed to the psychiatric ward of the appellee hospital at the request of her husband and on the recommendation of Dr. Latour. It is also undisputed that this was done against her will. The appellant maintains that statutory procedures under the Miss. Code Ann. were not followed in committing her to the hospital, and that her treatment once inside the hospital was improper as well. Once again, it is the opinion of this Court that the appellant must be given an opportunity to prove her claim at the trial level, making the granting of summary judgment inappropriate. For the foregoing reasons, this Court holds that summary judgment should not have been granted against the appellant by the trial court and that this assignment of error as presented by the appellant has merit.

V.

DID THE TRIAL COURT ERR IN SUSTAINING THE APPELLEE BILOXI REGIONAL MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GROUND THAT THERE WAS NO GENUINE ISSUE AS TO ANY MATERIAL FACT?
For all the reasons cited under Section IV of this opinion, this Court holds that summary judgment as to Biloxi Regional Medical Center was inappropriate and should not have been granted. Therefore, this assignment of error contains merit as well.

VI.
For the foregoing reasons, it is the opinion of this Court that the decision of the lower court should be reversed and remanded for a full trial on the merits.
AFFIRMED AS TO THE FALSE IMPRISONMENT CLAIM; REVERSED AND REMANDED ON COUNT 2.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.
HAWKINS, P.J., not participating.