501 So.2d 1093 (1986)
Jeanette BROWN, et al.
v.
Dr. William C. McQuinn, et al.
No. 55492.
Supreme Court of Mississippi.
May 14, 1986.
As Modified on Denial of Rehearing January 28, 1987.
John L. Walker, Walker & Walker, John Nichols, Jackson, for appellants.
Cary E. Bufkin, K. Hayes Callicutt, Shell, Buford, Bufkin, Callicutt & Perry, Lee Davis Thames, Fred Krutz, III, Luther T. Munford, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Jeanette Brown, the mother of seventeen-year-old Ronnie Brown, together with his brothers and sisters, filed this malpractice suit in the Circuit Court of the First Judicial District, Hinds County, Mississippi, Honorable Charles T. Barber, presiding, against Dr. William C. McQuinn and Dr. William E. Bowlus. The lower court sustained motions for summary judgments filed by Dr. McQuinn and Dr. Bowlus, and dismissed the complaint. The Browns have appealed to this Court.
The question presented is whether or not the lower court erred in sustaining the motions for summary judgments and in dismissing the complaint.
The record supporting and opposing the motions for summary judgments, which include depositions, interrogatories and answers, medical records and affidavits, reflect the following:
Ronnie Brown was experiencing jerking spells in October, 1979, and was seen at the medical health center in Greenwood, Mississippi, by Dr. John Alford, who prescribed medication for him. Ronnie continued to have the difficulty and was not doing well in school. Dr. Alford referred him to Dr. McQuinn who first saw Ronnie in his office in Jackson, Mississippi. He next saw him on March 7, 1980. Ronnie was admitted to Riverside Hospital by Dr. McQuinn, who was his primary treating physician. Dr. McQuinn also discharged him from that hospital. Dr. McQuinn's diagnosis at the time of discharge was cerebral dysrhythmia, myoclonic seizures. His secondary diagnosis was anemia, iron deficiency. Dr. McQuinn called in Dr. Bowlus, a neurologist, for consultation. Dr. Bowlus wrote the initial order for Dilantin, and Dr. McQuinn prescribed that medication. According to Dr. McQuinn, he and Dr. Bowlus were mutually responsible for following through on the treatment of Ronnie.
Dr. McQuinn discharged Ronnie from Riverside Hospital on March 26, 1980, with a final diagnosis of cerebral dysrhythmia, accompanied by myoclonic seizures. Ronnie and his parents went by Dr. McQuinn's office, where Ronnie was instructed to take 400 mg. of Dilantin and 30 mg. of phenobarbital daily. Dr. McQuinn indicated that *1094 he wanted to see Ronnie again in two or three weeks, but no appointment was made at that time. After Ronnie returned to his Greenwood home, he appeared to improve at first, but during his second week at home, his condition deteriorated. On April 11, Ronnie broke out in a high fever and rash consisting of measle-like bumps over his entire body. He had lost his sense of balance and coordination, was constantly sleepy, and was so ill that he could not stand up or walk around without holding onto something. His mother called Dr. McQuinn, who told her that the medicine could not be causing those problems, and told her to reduce the phenobarbital dosage. Five (5) days later, Ronnie's mother again called Dr. McQuinn, telling him that there was no improvement.
Ronnie was admitted to Greenwood Leflore Hospital on April 12, 1980, with an initial diagnosis of a possible allergic reaction. The attending physician was of the impression that the rash was secondary to hydantoin toxicity. Dilantin is a drug of the hydantoin family. Ronnie's condition did not improve, and he was transferred to University Medical Center, Jackson, Mississippi, on April 18, where a preliminary diagnosis was made of "Dilantin induced hepatitic failure." Ronnie remained at University Medical Center until he died on April 22, 1980. An autopsy was performed, which indicated that the cause of death was liver failure as a consequence of Dilantin hypersensitivity.
The key to the decision in this case is whether or not there was a genuine issue of material fact. If there is such an issue, the judgment of the lower court must be reversed. If there is not, then the judgment will be affirmed. There are a number of cases in this state interpreting Rule 56, Miss.R.Civ.P. In Hudson v. Bank of Edwards, 469 So.2d 1234 (Miss. 1985), the Court stated:
The standard for summary judgment is set forth in Rule 56 of the Mississippi Rules of Civil Procedure, which provides that the judgment sought shall be rendered forthwith, if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
469 So.2d at 1238. See also Bush v. Mullen, 478 So.2d 313 (Miss. 1985); Smith v. H.C. Bailey Companies, 477 So.2d 224 (Miss. 1985).
In Dennis v. Searle, 457 So.2d 941 (Miss. 1984), the Court said:
Issues of fact sufficient to require denial of the motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says just the opposite. Issues of fact, as a matter of proper construction of Rule 56 also exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.
457 So.2d at 944.
Many trial judges in this state seem not to have grasped the application of Rule 56 nor to realize what is meant by a genuine issue of material fact. Consequently, they are hasty in granting summary judgments, thereby benefitting none of the parties litigant. We remind the Bench and Bar of this Court's language in Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983):
Trial judges must be sensitive to the notion that summary judgment may never be granted in derogation of a party's constitutional right to trial by jury. Miss. Const. art. 3, § 31 (1890). On the other hand, there is no violation of the right of trial by jury when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment *1095 as a matter of law. There is no right of trial by jury in such cases.
Federal cases suggest that the burden is on the moving party to establish that there is no genuine issue of fact, although this burden is one of persuasion, not of proof. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt. Liberty Leasing Co. v. Hillsum Sales Corporation, 380 F.2d 1013, 1015 (5th Cir.1967); Heyward v. Public Housing Administration, 238 F.2d 689, 696 (5th Cir.1956).
We recognize that reasonable minds may often differ on the question of whether there is a genuine issue of material fact. In this context we find appropriate the admonition in a leading commentary on Federal Rule 56:
If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. And the problem of overcrowded calendars is not to be solved by summary disposition of issues of fact fairly presented in an action. 6 Moore's Federal Practice § 56.15[1.-2] p. 56-435 (1982).
444 So.2d at 362-63. See also Adickes v. S.H. Kress Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Hughes v. American Jawa Ltd., 529 F.2d 21 (8th Cir.1976); McLain v. Meier, 612 F.2d 349 (8th Cir.1979).
In Roberts v. Browning, 610 F.2d 528 (8th Cir.1979), the Eighth Circuit Court of Appeals, in reversing a summary judgment granted by the District Court in favor of the defendant, said:
In evaluating that determination it should be kept in mind that a federal district court has no discretion to grant a motion for summary judgment under Rule 56. However, even if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to deny the motion and permit the case to be developed fully at trial. The ultimate legal rights of the movant can always be protected in the course or even after trial... .
610 F.2d at 536.
With those principles in mind, we examine the record in the case sub judice. The appellants introduced the deposition of Dr. Gaetano S. Molinari in opposition to the motions for summary judgments. In ruling on the motion filed by Dr. Bowlus, the lower court held that Dr. Molinari was not qualified to testify under the decision in King v. Murphy, 424 So.2d 547 (Miss. 1983), and, therefore, granted the summary judgment. In addition to the deposition of Dr. Molinari, the appellants filed affidavits of Drs. William Barial, William Truly, Aris Cox and Dennis Franklin, in opposition to the motion for summary judgment filed by Dr. McQuinn. Likewise, the lower court held that those experts did not meet the requirements of King v. Murphy, supra, and were not qualified to testify. Accordingly, the motion for summary judgment by Dr. McQuinn was sustained.
Without specifically stating the qualifications of appellants' medical experts, it is sufficient to note that they are eminently qualified physicians. All of them had studied and familiarized themselves with the depositions of the appellees and other witnesses, and had inspected and studied the voluminous medical records pertaining to the deceased.
Dr. Molinari, a neurologist and psychiatrist, enumerated specific acts of negligence, both by omission and commission, which made a genuine factual issue. He further stated that, in his opinion, there is no different standard in Mississippi in regard to the discontinuation of drugs on account of toxic effects as opposed to hypersensitivity reactions.
Drs. Barial, Cox, Franklin and Truly executed affidavits to the effect that appellee Dr. McQuinn was negligent in his treatment and care of Ronnie, and enumerated specifically the acts of negligence. As *1096 stated, the lower court held that all the appellants' medical experts did not know the standard of care in Mississippi as pronounced by King v. Murphy, supra, and on that basis alone sustained the motions for summary judgment.
In King v. Murphy, supra, the locality rule was extended and expanded with the following language:
[T]he standard of care by which the acts or omissions of physicians, surgeons, or specialists are to be judged shall be that degree of care, skill and diligence practiced by reasonably careful, skillful, diligent and prudent practitioner in such field of practice or specialty in this case, and for a reasonable distance adjacent to state boundaries. An expert witness who is knowledgeable of, and familiar with, the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this state.
424 So.2d at 550.
After the briefs were filed in the present case, a petition for rehearing was sustained in Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), and the majority of the Court stated:[1]
When all that has been said above is considered, we today do little more than smooth some of the rough edges of King v. Murphy. King recognizes that, as a part of our law, the formulation of the duty of care is to be informed by standards of medical competence prevailing statewide in Mississippi "and for a reasonable distance adjacent to state boundaries". 424 So.2d at 550. This necessarily includes Memphis, Mobile and New Orleans at the very least. When the standards of medical practice prevailing in Jackson, Mississippi, are added, it may be seen that for all practical purposes King has embraced what many call the "national standard of care". Aside from highly specialized and in many instances still experimental services with respect to certain catastrophic diseases and medical problems, the quality of medical and health care in Memphis, Mobile, New Orleans and Jackson is consistent with that available anywhere in the land. The refinement of King we make on this score may be expected to eliminate legalistic debates over whether Birmingham, or Houston, or Nashville, or Atlanta is within "a reasonable distance adjacent to state boundaries". Past that it should have little practical effect.
466 So.2d at 873.
Subsequently, the following cases were decided, which reiterated and emphasized the standard of care in Mississippi among physicians, viz: Smith v. Lee, 484 So.2d 1028 (Miss. 1986); Trapp v. Cayson, 471 So.2d 375 (Miss. 1985); Hardy v. Brantley, 471 So.2d 358 (Miss. 1985); Reikes v. Martin, 471 So.2d 385 (Miss. 1985).
In Trapp v. Cayson, supra, the Court, speaking through the writer here, said:
In the recent case of Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), in a majority opinion, the Court expanded the rule established in King v. Murphy. Actually, the law of Mississippi in malpractice cases, as now stated, is based upon a national standard of care. The question relating to competency of a physician's testimony is to be treated the same as any other expert.
471 So.2d at 380.
We are of the opinion that the lower court erred in holding that the medical experts used by appellants on the motion for summary judgment were not qualified to testify as such. The credibility, weight and worth of their testimony is for the jury to decide. The lower court erred in sustaining the motions for summary judgments filed by the appellees. Those judgments are reversed.

SUPPLEMENT
This Court considers it proper to address discovery questions posed by appellants, *1097 since they probably will appear again, absent our comment thereon.
The initial contention raised concerns whether a party litigant should be compelled to search for, obtain, and disclose in answers to interrogatories within certain time constraints, expert witnesses he intends to use. Appellants complain that their interrogatories were filed on October 5, 1982, which included a request for the identity of expert witnesses. Appellees continually stated that they had not procured expert witnesses and upon doing so would notify the appellants, accordingly. The lower court denied appellants' motion to compel, although directing the appellees to advise appellants of their expert witnesses at a reasonable time prior to trial. On June 28, 1983, appellees filed the motions for summary judgment with a disclosure of their expert witnesses still pending.
Miss.R.Civ.P. 26(f)(1) requires the supplementation of responses to discovery with respect to any interrogatory directly addressed to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." However, this affords little comfort to the litigant, who finally receives the identity of his opponent's expert witness subsequent to the end of discovery. The appellants are foreclosed from conducting further discovery thereon without court order.
The United States District Court judges of Mississippi have circumvented this dilemma by promulgating local Rule 6(g) which provides:
Expert witnesses for all parties shall be designated not later than sixty (60) days prior to the discovery deadline set forth in the scheduling order, and discovery regarding experts shall be completed within the discovery period. The court will allow the subsequent designation and/or discovery of expert witnesses only upon a showing of good cause.
The sixty-day period provided in the foregoing United States District Court local rule may be too stringent and restrictive for the state procedure. However, to accomplish the purpose of the Mississippi Rules of Civil Procedure as stated by Rule 1, "to secure the just, speedy and inexpensive determination of every action" and to prevent discovery of expert opinion from degenerating into a "game of evasion", Square D Company v. Edwards, 419 So.2d 1327, 1329 (Miss. 1982), we are of the opinion that the rule relating to this question should be considered by the Supreme Court Advisory Committee on Rules in the State of Mississippi, and that the matter should be referred to that committee for study.
Further, there appears to be an erroneous belief by the lower court that an expert witness cannot be deposed under our Rules of Civil Procedure. However, the rules do not state this as an absolute. With some qualification as to experts, Miss. R.Civ.P. 30(a) provides: "After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination." Miss.R.Civ.P. 26(b)(4) qualifies this by limiting discovery of expert opinion as of right to interrogatories, but "upon motion, the court may order further discovery by other means... ." This is not an absolute bar to deposing expert witnesses.
Appellants pose another question to this Court that should be discussed. They claim error precipitated from the lower court's failure to overrule Dr. McQuinn's motion for protective order. Dr. McQuinn, who was previously deposed by appellants, sought a protective order in response to appellants' notice for a second deposition.
The frequency of employing the methods of discovery is limited by, inter alia, Miss. R.Civ.P. 26(d) pertaining to protective orders. While the appellee's motion for protective order was pending, the lower court ordered discovery ended with regard to appellee Dr. McQuinn. Thus, the lower court avoided ruling on the pending motion for protective order. Therefore, on remand, the lower court should make a determination as to whether Dr. McQuinn has shown good cause in seeking a protective order to *1098 avoid annoyance, embarrassment, oppression or undue burden and expense as a consequence of being deposed a second time. See Miss.R.Civ.P. 26(d).
The judgments of the lower court are reversed, and the cause is remanded for trial on the merits.
REVERSED AND REMANDED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
GRIFFIN, J., not participating.
NOTES
[1] The writer concurred in the reversal of Hall v. Hilbun but dissented to the evolution of King v. Murphy into a national standard of care.